Argued 18 March, decided 30 March, 1903.

**STATE *v.* HOUGHTON.**

[71 Pac. 982.]

43   125
s45   111

CRIMINAL LAW — IDENTIFICATION OF PHOTOGRAPH AS HEARSAY.

1. Testimony that a prosecuting witness recognized a photograph of defendant as that of the person whom he desired to complain against is hearsay and inadmissible.

HEARSAY EVIDENCE — HARMLESS ERROR.

2. Where a witness was erroneously permitted to testify that a prosecutor recognized defendant's photograph at the police station as a photograph of the person who he claimed had committed a crime, and there was subsequent testimony tending to show that defendant's photograph was in the rogues' gallery because of his having committed other crimes, the error was not harmless.

EVIDENCE OF OTHER AND DISCONNECTED CRIMES.

3. It is reversible error to admit in a criminal case evidence that defendant had committed other crimes in no way connected with the one charged.

ERROR MADE HARMLESS BY OTHER EVIDENCE.

4. Error in admitting detailed evidence of hearsay matters is not rendered harmless by evidence of the same matter given without objection, but in a cursory way as an incident of a greater story and without details or emphasis.

From Multnomah: ARTHUR L. FRAZER, Judge.

Charles, better known as "Chick" Houghton, was convicted of an assault with intent to rob, and appeals.

REVERSED.

For appellant there was a brief over the names of *Wilson T. Hume* and *Chas. F. Lord*, with an oral argument by *Mr. Hume.*

For the state there was a brief over the names of *John Manning*, District Attorney, and *Arthur C. Spencer*, with an oral argument by *Mr. Spencer*.

MR. JUSTICE BEAN delivered the opinion.

The defendant was charged with the crime of robbery from the person of one Balch, by assault and putting in fear, and upon his trial was convicted of an assault with intent to rob. . Balch was assaulted by three men, and robbed of a check for $7, and $20 to $25 in money, about 11 o'clock on the night of November 7, 1902, on a street in the "North End" of the City of Portland. A short time before the robbery he was in the Mint saloon, and while there received change for a twenty-dollar gold piece. Several persons, strangers to him, were in the saloon at the time, one of whom he testifies was the defendant. After receiving his change he went out on the street, where he was accosted, as he says, by the defendant, who inquired if he was a stranger in town, and, receiving an answer in the affirmative, said that he was also a stranger, and suggested that they walk around and see the town together. They soon after started, and had gone but a short distance when two persons suddenly stepped out in front of them, and, with the aid of defendant, as Balch testifies, committed the robbery. Balch immediately reported the crime to the police. At the trial he testified, without objection, that the morning after the robbery he recognized a photograph of the defendant at the police station as being that of one of the persons engaged in the commission of the crime. Joseph Day was thereupon called as a witness for the prosecution, and, after testifying that he was a member of the detective force, and detailed to inquire into the commission of this particular offense, stated that Balch described to him one of the men engaged in its commission, and said that he would know him if he saw him;

that he asked Balch if he thought he would recognize the picture of the man, and took down the book belonging to the office, containing photographs of sundry persons. Objection was made to this testimony because it was hearsay, but the objection was overruled, and the witness continued : "I took down the book, and turned over, page by page, from A, B, C, all through, and let him look at the pictures, and he came to Houghton's picture, and he said, 'That is the man.'" A motion was thereupon made to strike out this evidence, and the district attorney remarked that he had no objection. The court, however, ruled that it might be stricken out if the district attorney consented, but that, in his opinion, it was competent. Exception was taken to the ruling as to the competency of the testimony, when the court remarked : "I think the fact that he was able to pick out his picture is material evidence in this case." The motion to strike out was renewed and overruled.

The defendant, testifying in his own behalf, among other things, in response to questions of his counsel, said that his picture had been taken and was at the station because he would not act as a "stool pigeon" for Dectective Day ; that he was walking along the street one day, when the detective seized him, took him to the station, and had his picture taken, without any charge having been preferred against him. On cross-examination he was asked : "You say that Joe Day just walked out on the street, and run you into the station, and took your photograph in the gallery ? A. That is exactly what he did. Q. I will ask you if it is not a fact, and that you know it, that the reason that picture was taken was because you held up a man at the point of a gun, and another man robbed him, and you ran up into a house and jumped out of the window, and as soon as they arrested you they had your photograph taken ?" Objection was made to this question, and the

court requested to instruct the jury to disregard it, but the request was denied, and the examination proceeded: "Q. I will ask you if it is not a fact that you saw Joe Day in Seattle, near the corner of Second Avenue and Yesler Street, and when you saw him you ran and hid in a stairway? A. No; I did not. Q. You did not see him over there at all? A. No, sir; I did not. Why should I run from him? Q. Probably you know. * * You did not resist the taking of that picture, did you? A. Yes; I did. I told them they had no right to take that picture; I was not arrested for nothing; that I could not walk down the street; it was a funny thing, when I was not arrested, that I could not turn a corner but what Joe Day was near at hand." Objection was made to this question, but overruled by the court. "Q. You know that a little while before that you had stolen $200?" An objection was sustained to this question but the witness answered, "It ain't so;" and upon motion this was stricken out, and the jury instructed to disregard it. Day was subsequently called in rebuttal, and was interrogated by the district attorney and answered as follows: "You heard the explanation of Houghton about taking his picture? A. Yes; I did. Q. I wish you would explain the circumstances of taking that picture." The question was objected to because it was irrelevant and immaterial, but the objection was overruled, and the examination proceeded: "Q. State whether or not the picture was taken because of any robbery or crime the defendant, Houghton, had committed? A. Yes. Q. What was the crime he had committed?" Objection was made to the last question, and it was not insisted upon by the district attorney.

1. The admission of the testimony of Detective Day that the prosecuting witness, Balch, the morning after the robbery, identified the photograph of the defendant in the rogues' gallery at the police station as that of one of the

parties engaged in the commission of the crime, the admission of the testimony as to when and under what circumstances the defendant's photograph was taken, and the ruling of the court on his cross-examination in reference thereto, are all made the basis of separate assignments of error. Without noticing the assignments in detail, however, it is clear that they are of such a character as to require a reversal of the judgment. The testimony that Balch identified the defendant's photograph as that of one of the guilty parties was mere hearsay, and, under the circumstances, prejudicial to the defendant. The crime for which he was being tried was committed at night, and, as he was a stranger to the prosecuting witness, an important and material question in the case was whether Balch was able to identify him as one of the guilty parties. The fact that the next morning Balch was shown by the detective a photograph of the defendant, and identified it as a picture of one of the parties concerned in the commission of the crime, was damaging testimony, in view of the ruling of the court that it "was material evidence in the case." It amounted to nothing more than an identification or description of the culprit, and, as it was not in the presence of the defendant, was hearsay evidence and incompetent. This is in accordance with oft-repeated holdings of the courts. Thus, in *People* v. *Johnson* 91 Cal. 265 (27 Pac. 663), and *People* v. *McNamara*, 94 Cal. 509 (29 Pac. 953), the testimony of an officer as to the description of the culprit given him by the prosecuting witness before the arrest in each instance was held to be hearsay, and its admission prejudicial error, for which the cases were reversed. Again, in *Murphy, alias Jones* v. *State*, 41 Tex. Cr. R. 120 (51 S. W. 940), it was held that on a trial for murder it was incompetent and inadmissible, as original evidence, to prove by a witness who was present at the killing,

and only saw defendant for an instant at that time, that subsequently she picked him out and identified him at the jail, among several other inmates, as the person who committed the murder. So, also, in *Commonwealth* v. *Fagan*, 108 Mass. 471, evidence that the person who was robbed described the robber to the officer, and that the officer thereupon went in search of the defendant, was held hearsay, and not admissible to identify the robber with the defendant. And in *O'Toole* v. *State*, 105 Wis. 18 (80 N. W. 915)— a case somewhat similar to the one at bar—two policemen testified to the effect that the prosecuting witness on the day after the robbery stated that plaintiff in error was the man who committed it; but the court held the admission of such testimony error, saying: "It was placing before the jury an unsworn declaration under circumstances likely to give it great weight. The darkness and confusion surrounding the robbery justified an argument upon the improbability of the prosecutor's ability to have seen his assailant sufficiently to identify him, and the declaration of defendant's identity when presented among others before complainant must be weighed with the jury upon the facts so declared, and therefore prejudiced the accused. Error was thus committed for which the judgment must be reversed." The admission of the testimony that the prosecuting witness recognized defendant's photograph at the police station the morning after the robbery as that of one of the parties engaged in its commission was therefore error.

2. Nor was the error harmless, as it brought prominently before the jury the fact that the defendant's picture was in the rogues' gallery, presumably because of the commission of other crimes by him, or because he was regarded by the police as a common criminal, which, in connection with the nature of his subsequent cross-examination, practically amounted to an attack on his general character.

3. In addition to this the testimony concerning the commission by him of other distinct crimes was in no way connected with that for which he was on trial, thus violating a universal rule of law.

4. Neither was this error cured by Balch's testimony, admitted without objection. Balch did not go into details, and his evidence on this subject could perhaps be regarded only as a circumstance attending the search for the guilty parties. When Day was called, however, the entire matter was gone into, over the objection of the defendant, and under the ruling of the court that such evidence was material testimony against him.

As these views require a reversal of the judgment, it is perhaps unnecessary to consider whether the crime of which the defendant was convicted was included in the one charged in the information; but it is difficult to understand how robbery from the person by assault and putting in fear could be committed without an assault with an intent to rob.

The judgment is reversed, and a new trial ordered.

REVERSED.

Decided 8 June, rehearing denied 3 August, 1903.