Argued May 8, affirmed June 9, rehearing denied July 7, 1914.

## STATE *v.* GOFF.

### (142 Pac. 564.)

**Criminal Law—Evidence—Dismissal of Codefendants.**

1. Under Section 1531, L. O. L., providing that where several per-
sons are charged in the same indictment with a crime, and the court
is of opinion that as to a particular defendant there is not sufficient
evidence to put him on his defense, the court must, if requested to do
so by another defendant, discharge such defendant in order that he
may be a witness for his codefendant, the denial of such a motion
is not error, where the defendants jointly indicted have been granted
separate trials, and the trial of the defendants, as to whom the dis-
missal is requested, has not taken place.

**Criminal Law—Appeal—Harmless Error—Admission of Evidence—
    Cure by Instructions.**

2. Where incompetent evidence is admitted, its withdrawal and
the instruction to the jury to disregard it, in order to cure the error,
should be so emphatic as to leave no doubt in the minds of jurors
that the evidence is out of the case and is not to be considered for
any purpose.

**Criminal Law—Appeal—Harmless Error—Admission of Evidence—
    Cure by Instructions.**

3. Where, on the withdrawal of testimony as to statements by a
defendant jointly indicted with the person on trial, the court in-

structed that the evidence was inadmissible and should not be consid-
ered in rendering the verdict, and in its final charge again stated
that the evidence had been stricken out and that the jury should not
consider it in their deliberations, error in admitting the testimony
was cured.

#### Larceny—Evidence—Admissibility.

4. In a prosecution for the larceny of 25 head of cattle, testimony
that defendant, a short time after the larceny, had a $100 bill changed
was admissible to show his possession of money.

#### Criminal Law—Appeal—Harmless Error—Admission of Evidence.

5. In a prosecution for larceny, the admission of testimony as to a
conversation with defendant, in which defendant said it made no
difference as to his age in taking a homestead, though irrelevant, was
harmless.

#### Criminal Law—Appeal—Review—Discretion of Court—Examination of Witness.

6. Under Section 862, L. O. L., providing that a witness once ex-
amined shall not be re-examined as to the same matter without leave
of court, and that leave is granted or withheld in the exercise of a
sound discretion, and Section 1626 providing that the Supreme Court
is required to give judgment in criminal cases without regard to the
decisions of questions which were in the discretion of the court below,
permitting re-examination of the state's witnesses in which the same
matter is brought out as on cross-examination by the defendant, who
has attempted to impeach the witnesses by proof of inconsistent state-
ments, is not ground for reversal.

[As to cross-examination and impeachment of witnesses, see
notes in 14 Am. St. Rep. 157; 82 Am. St. Rep. 25.]

#### Criminal Law—Credibility of Witnesses—Instructions.

7. Under Section 868, Subdivision 3, L. O. L., requiring the court to
instruct on all proper occasions that a witness, false in one part of his
testimony, is to be distrusted in others, an instruction that a witness,
false in one material part of his testimony, is to be distrusted in
others, and, if a witness is found to have testified willfully false in
any material part of his testimony, the jury are at liberty to disregard
the entire testimony of the witness, except as it may be corroborated,
is proper, and the court is not required to charge that it is mandatory
to disregard all of the evidence of a witness whose testimony is will-
fully false in a part thereof.

#### Criminal Law—Trial—Instructions—Construction as a Whole.

8. The instructions should be construed as a whole.

#### Criminal Law—Trial—Instruction—Requisites.

9. Trial courts, when not requested to charge in writing, may in-
struct either in writing or orally, at their option.

From Grant: DALTON BIGGS, Judge.

The defendant, Lester Goff, was indicted jointly
with J. B. Jingles, Ben Colvin, James Clark, and Mo-

nard Fix for larceny of cattle, and from a judgment of conviction he appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. A. D. Leedy.*

For the State there was a brief with oral arguments by *Mr. V. G. Cozad* and *Mr. James A. Fee.*

In Banc.    MR. JUSTICE RAMSEY delivered the opinion of the court.

On the 23d day of May, 1913, the grand jury of the county of Grant returned an indictment charging J. B. Jingles, Ben Colvin, James Clark, Lester Goff and Monard Fix with the crime of larceny, in Grant County, committed on the 25th day of August, 1912, of 19 cows and 6 steers; 16 of the cows and 5 of the steers being the property of J. T. Johnson, and 3 of the cows and 1 of the steers being the property of Felix A. Johnson, all of said cows and steers having been stolen as one act, at the same time and place.    This indictment charges that the defendants acted together in the committing of said crime.    The defendants Colvin, Clark and Goff were arrested, but Jingles and Fix were not apprehended.    The three that were arrested were arraigned and each pleaded not guilty, and each demanded a separate trial.    The defendant Lester Goff was tried and found guilty.    The verdict of guilty was returned on November 22, 1913, and the defendant Goff was sentenced on December 6, 1913.    He appeals and assigns the commission of 32 alleged errors, for which he asks a reversal of the judgment.    The result of the case against the other defendants is not relevant to any matter on this appeal, as they demanded separate trials, and the case as to them was

not disposed of until after the termination of the trial of Goff.

1. When the evidence in chief for the state was in, the defendant moved the court for an order dismissing the case as to the defendants Clark and Colvin, on the ground that there was not sufficient evidence to put them on their defense, in order that they might be witnesses for him, but the court denied said motion. Each of the defendants demanded a separate trial, and the defendant Goff was on trial when this motion was made; but Colvin and Clark were not on trial, and there was no way in which the court below could know what evidence would be produced against them prior to their being put on trial, unless the prosecution had stated to the court what evidence it expected to produce against them. Evidence that would be admissible against Colvin and Clark might not be admissible against Goff. The trial court could not properly assume that there would be no evidence produced against Colvin and Clark except what was given on the trial of Goff. If, after the supposed conspiracy for the stealing and disposal of the cattle was ended, Colvin and Clark had admitted their guilt, such admission could not have been proved in the case against Goff, but it would have been admissible against them.

Section 1531, L. O. L., provides that where several persons are charged in the same indictment with a crime, and the court is of the opinion that, as to a particular defendant, there is not sufficient evidence to put him on his defense, the court must, if requested to do so by another defendant, discharge such defendant, in order that he may be a witness for his codefendant. Under said section, the trial court is required to discharge a defendant, in order that he may

be a witness for a codefendant, only when the court is of the opinion that there is not sufficient evidence against such defendant to require him to be placed on his defense, and it necessarily follows that, if the court is not of that opinion, it should not discharge such defendant.

If Colvin and Clark had been on trial with Goff, the trial court would have been in a position to know what evidence there was against them, and, on being requested so to do, would have dismissed the case against them, if it was of the opinion that there was not sufficient evidence to justify putting them on their defense. The grand jury had indicted them, and that was *prima facie* evidence that there was sufficient proof to justify their indictment. Official duty is presumed to have been duly performed, and hence we must presume that the trial court was not of the opinion that there was not sufficient evidence to put Colvin and Clark on their trial, and hence denied said motion.

2, 3. On page 32 of the appellant's brief, counsel for appellant groups together, for convenience, assignments 1, 2, 3, 4, 5, 6, 7, 8, 11, 12, and 13, and says that they may all be considered under one head, and that they refer to the supposed error of the court in refusing to strike out the testimony of Grover Andrus, Mrs. Stella Knapp and Mary Andrus.

When the state rested its case, the defendant, by his counsel, filed a motion to strike out testimony introduced by the state as follows, to wit: All of the evidence of the witness, Grover Andrus as to the statements made to said witness by Ben Colvin, one of the defendants, relating to any bulls or cattle belonging to J. T. or Felix A. Johnson, and also all of the evidence of said witness, and all of the evidence of J. T. Johnson, in relation to statements made to him by

Ben Colvin in regard to bulls, and all the evidence of said J. T. Johnson in regard to any acts or conduct of Ben Colvin in relation to any bulls or cattle of any kind belonging to J. T. or Felix A. Johnson, for the reason that said evidence is incompetent, irrelevant and immaterial and not responsive to any allegation in the indictment, and because no foundation has been laid therefor, and the same is not binding on the defendant Goff, now on trial. Said motion asked also that all the evidence of Stella Knapp and Mary Andrus be stricken out for the reason that the same is incompetent, irrelevant and immaterial, and does not tend to establish any of the allegations of the indictment, and to strike out also all evidence in relation to the $100 bill for the same reasons. When said motion was made, counsel for the state consented that the court sustain that part of said motion pertaining to the evidence regarding the bulls and the testimony of Grover Andrus, for the reason that the state had not been able to connect that point in a way to make it legitimate against the defendant on trial.

The court thereupon struck out the evidence of Grover Andrus in which he testified to statements relating to taking and driving away the cattle or bulls of Johnson, and as to statements made by Colvin to Andrus, and also the evidence of J. T. Johnson in reference to the bulls that he owned and were driven away by Colvin. The court struck out said evidence and instructed the jury that all evidence of Johnson as to the acts or conduct of Colvin as to said bulls was inadmissible and should not be considered by them in rendering their verdict. When said evidence was offered, it was admitted on the express condition that the state would connect it with the case charged against the defendant, and that, if the state failed so to connect

it, it would be taken from the jury by the court. The state having failed to connect it with the crime charged, the court struck it out, and, at that time, instructed the jury to disregard it in their deliberations. When the court gave its final charge to the jury, it again charged them that said evidence had been stricken out, and that they should not consider it in their deliberations.

In relation to withdrawing from the jury inadmissible evidence, 11 Ency. Pl. & Pr., page 307, says:

"It is very generally settled that error in admitting illegal evidence may be cured by instructions directing the jury to disregard it, although there are some decisions which flatly deny the doctrine that error may be thus cured."

38 Cyc. 1630, 1631, says:

"When evidence improper for the jury to consider has been introduced, the court may and should withdraw the evidence and instruct the jury to disregard it. If this is done, it is ordinarily held sufficient to cure the error, the presumption being that no prejudice resulted, and it is only when it is reasonably apparent that improper evidence has affected the verdict that there is ground for reversal."

In *State* v. *Eggleston,* 45 Or. 353 (77 Pac. 740), the court says:

"The court, over objection and exception, admitted in evidence alleged declarations of Florence Cline, not made in the presence of the defendant, to the effect that he was guilty of the crime charged; but thereafter the jury were instructed not to consider such evidence, and any error that may have been committed by the admission of such declarations was cured by the instructions."

In *State* v. *Foot You,* 24 Or. 66 (32 Pac. 1031, 33 Pac. 537), the court below had admitted in evidence a pistol

with the understanding that the state would at some subsequent stage of the trial connect it with the defendant, and, the state having failed to do so, the court withdrew it from the case, and this court held that there was no prejudicial error committed by the trial court.

The weight of authority seems to be to the effect that where the trial court admits in evidence incompetent testimony and subsequently withdraws it from the case and instructs the jury to disregard it in their deliberations, such withdrawal and instruction, cure the error in its admission, unless it is apparent in some manner that such excluded evidence had some effect upon the verdict. But we hold that the withdrawal of the incompetent evidence and the instruction to the jury to disregard it should be so emphatic as to leave no doubt in the minds of jurors that such evidence is out of the case and is not to be considered by them for any purpose: *State* v. *Rader*, 62 Or. 40 (124 Pac. 195). We hold that the withdrawal of the incompetent evidence and the instructions of the court in this case were so emphatic as to cure the error in its admission. We find no prejudicial error in the rulings referred to in assignments 1, 2, 3, 4, 5, 6, 7, 8, 11, 12, and 13.

4. The ninth assignment of error refers to the court's permitting the witness Albert Patterson to testify in relation to a trip that he took with the defendant and the changing of a $100 bill. The witness testified that he and Goff were on their way to attend the round-up at Pendleton and stopped at Pilot Rock, and that Goff had a $100 bill changed at the bank at Pilot Rock. We presume that this evidence was offered for the purpose of showing that Goff had money. The state claimed that the defendants stole and dis-

posed of 25 head of cattle, and, if they did so, they would be likely to have money. We think that said evidence was properly admitted.

5. The tenth assignment asserts that the court erred in permitting the witness Albert Patterson to testify to conversations that the witness had with the defendant Goff. It seems that the witness was asked whether he had had a conversation with the defendant about taking a homestead and about the witness' age, and he answered that he had had such a conversation, and that the defendant said that it made no difference as to his age in taking a homestead. While those conversations may have been irrelevant, the answers given could not have prejudiced the rights of the defendant, and their admission was harmless.

We find no merits in assignments 14 and 19. The evidence there referred to could not have prejudiced the rights of the defendant.

6. Assignments 15, 16, 17, 18, 20, 21, 22, 23 and 24 raise but one question. The defense had attempted to impeach certain witnesses for the state by showing that they had at other times made statements inconsistent with their evidence given on the trial.

Counsel for defendant had on cross-examination, for the purpose of impeaching, asked these witnesses whether they at certain times and places, in the presence of persons named, had made certain statements which were inconsistent with their evidence given by them on the trial, and they made answers to these questions. Afterward the defense called witnesses to show that the plaintiff's said witnesses had made the supposed contradictory statements. Then, in rebuttal, the court permitted the state to recall its said witnesses whom the defense was seeking to impeach and to re-examine them as to the supposed contradictory state-

ments imputed to them. Referring to the evidence of these witnesses, counsel for the defendant, on page 38 of his brief, states his objection thereto thus:

"It is true the law permits explanations to be made of contradictory statements, but these witnesses were not called for the explanation of contradictory statements, but were called merely for the purpose of making further denials. There is no difference between the testimony of these witnesses in their rebuttal testimony and their testimony in chief. The same identical questions were asked them by counsel for the state, repeating the questions verbatim, as asked by defendant's counsel on cross-examination in chief for the purpose of impeachment; their answers being identically the same as on the first examination."

It appears, from the contention of counsel for the defendant, that these witnesses were called in rebuttal and asked the same questions that were propounded to them when they were on the stand before, and that they gave the same answers to the questions that they had given before. Assuming that counsel for the defendant is not in error in his statements as to the character of the questions asked and the answers returned, we conclude therefrom that the evidence given by these witnesses in rebuttal was the same that they gave in their former testimony, and that it added nothing to the evidence in the case, and that therefore the defendant could not have been prejudiced thereby.

Section 862, L. O. L., prescribes the manner of examining witnesses. It is as follows:

"A witness once examined shall not be re-examined as to the same matter without leave of the court, but he may be re-examined as to any new matter upon which he has been examined by the adverse party. After the examinations on both sides are concluded, the witness shall not be recalled without leave of the

court.    Leave is granted or withheld in the exercise of a sound discretion.''

The first sentence of the foregoing section provides that a witness once examined shall not be re-examined as to the same matter without leave of the court; but he may be re-examined as to the same matter with leave of the court, and leave is granted or withheld in the exercise of a sound discretion.    It is clear that the court below had the right, in the exercise of a sound discretion, to permit the state to recall said witnesses and to re-examine them as to the same matter upon which they had previously been examined.

When the trial court is authorized to allow or disallow anything in its discretion, its allowance or disallowance of the thing in question can be reviewed by the appellate court only for an abuse of its discretion; and in criminal cases this court, on appeal, is required to give judgment ''without regard to the decision of questions which were in the discretion of the court below'': Section 1626, L. O. L.    The court below did not err in permitting the state to recall said witnesses and re-examine them as to matters as to which they had previously testified.

7. The appellant in his thirtieth assignment of error contends that the court erred in giving the following charge to the jury:

''A witness, false in one material part of his testimony, is to be distrusted in others; and, if any witness in this case is found to have testified willfully false in any material part of his testimony, you are at liberty to disregard the entire testimony of such witness, except so far as it may be corroborated by some credible evidence which you believe.''

The appellant contends that, where a witness is willfully false in a part of his evidence, it is mandatory

upon the jury to disregard all of his evidence, except in so far as it is corroborated by some credible evidence that the jury believes.

40 Cyc., pages 2586, 2587, says:

"As a general rule, the fact that a witness has willfully testified falsely as to a material matter lays him open to suspicion and justifies a jury in rejecting all of his testimony except such part thereof as may be sustained by some evidence in corroboration of his statements; but a jury is not required to do this, and may accept such of the witness' testimony as they deem proper, notwithstanding his false statements, and a court cannot withdraw his evidence from the jury's consideration."

2 Elliott on Ev., Section 956, says:

"When a witness knowingly and willfully testifies falsely to a material fact in regard to which he is interrogated, the jury may apply the maxim, *'Falsus in uno, falsus in omnibus,'* to his testimony, and totally disregard and reject it. But care should be observed in applying this rule, and the court should not invade the province of the jury, by instructing them too positively upon the subject."

Discussing this question, Prof. Jones, in his work on Evidence (2 ed.), page 1165, *inter alia,* says:

"Fifth, the instruction should not be so framed as to direct or require the jury to disregard the testimony of such witness entirely; but the rule should be applied by the jury according to their judgment for the ascertainment of truth. On this last point there has been some difference of opinion; and, it has sometimes been urged that when a witness has willfully and knowingly perjured himself as to any material point, the jury are bound not to give weight to his testimony, unless corroborated by other evidence; and it has even been held that such testimony should not be submitted to the jury. * * Hence, according to the better reasoning and the weight of authority, the maxim, *'Falsus*

*in uno, falsus in omnibus,'* is a rule of permission and not a mandatory one. It is in the discretion of the jury to wholly reject the testimony of a witness whom they believe to have testified falsely in some particulars, or to accept some of his statements and reject others.''

Section 868, L. O. L., subdivision 3, requires the court to instruct the jury on all proper occasions:

''That a witness, false in one part of his testimony, is to be distrusted in others.'' .

The writer of this opinion will say, as *obiter dictum,* that, in his opinion, the above rule from our code is a modification of the old maxim, *''Falsus in uno, falsus in omnibus.''* To say that a witness, false in one part of his testimony, is to be distrusted in others is materially different from saying that a witness, false in one thing, is false in all. To distrust a witness is not necessarily to reject his evidence.

The California code is, we believe, the same as our code on this subject. In *People* v. *Spraque,* 53 Cal. 494, the court says:

''The maxim, *'Falsus in uno, falsus in omnibus,'* is not to be construed as authorizing the court to charge that, if a witness perjures himself in respect to one or more particulars, the jury must reject all his testimony. * * The rule is that the jury may reject the whole of the testimony of a witness who has willfully sworn falsely as to a material point; that is to say, the jury, being convinced that a witness has stated what was untrue, not as the result of mistake or inadvertence, but willfully and with the design to deceive, must treat all of his testimony with distrust and suspicion, and reject all unless they shall be convinced, notwithstanding the base character of the witness, that he has in other particulars sworn to the truth. The third subdivision of Section 2061 of the Code of Civil Procedure is but declaratory of the rule above con-

sidered, and, by requiring the jury to distrust, necessarily authorizes them to reject all of the testimony of such a witness, in a proper case."

When a witness has knowingly testified falsely as to a material point in a case, the statute requires the jury to distrust other parts of his evidence, and they may, in their discretion, reject all of his evidence, or they may properly accept and act upon other parts of his evidence, if they believe that, as to those facts, he is telling the truth. A witness may knowingly testify falsely in one part of his testimony and truthfully in other parts. As the jury are the exclusive judges of the credibility of a witness, they may believe parts of his evidence and reject the remainder.

The trial court is required to instruct the jury that a witness, false in one part of his evidence, is to be distrusted in other portions thereof, but the trial court has not authority to instruct a jury that, if they believe that a witness has knowingly testified falsely as to a material fact, it is their duty to reject all of his evidence, unless it is corroborated, and to do so is to invade the legitimate province of the jury. The trial court did not err in giving said instruction.

8. The appellant complains of certain charges given by the trial court. We have examined said charges in connection with the other charges given. The instructions were given as a whole and should be construed as a whole.

In *Nave* v. *Flack,* 90 Ind. 210, 211 (36 Am. Rep. 205), the court says:

"The chief point of assault is the first sentence of the instruction. This is singled out, and its fault is asserted to be unanswerably proved. But an instruction is not to be disposed of by dissection; if good as a whole, it will stand. Few rules are better settled than that an instruction is to be taken as an entirety."

The same is true of the entire charge.

In Volume 2 of Thompson, Trials, Section 2407, the author says:

"The charge is entitled to a reasonable interpretation. It is construed as a whole, in the same connected way in which it was given, upon the presumption that the jury did not overlook any portion, but gave due weight to it as a whole; and this is so, although it consists of clauses originating with different counsel and applicable to different phases of the evidence. If, when so construed, it presents the law fairly and correctly to the jury, in a manner not calculated to mislead them, it will afford no ground for reversing the judgment, although some of its expressions, if standing alone, might be regarded as erroneous, or because there may be an apparent conflict between isolated sentences, or because its parts may be in some respects slightly repugnant to each other, or because some one of them, taken abstractly, may have been erroneous. If, therefore, a single instruction is found which states the law incorrectly, and it is qualified by others in such a manner that the jury were probably not misled by it, it will not be a ground for reversing the judgment."

The appellant criticises some of the instructions, and contends that they assume as true material facts in dispute; but, when the instructions are construed as a whole, it is clear that the jury could not have understood from the instructions that said facts were not disputed or not to be passed on by them in accordance with the evidence in the case.

9. Trial courts, when not requested to charge in writing, may instruct in writing or orally, at their option, but, whether their charges be written or oral, they should be prepared with care, so as to avoid ambiguities and the assumption by implication or otherwise of facts as true that are disputed and to be passed on by the jury. Each separate charge should be so

clearly expressed that the jury will not mistake its meaning. On appeal, the instructions are construed reasonably and as a whole. We find that the instructions submitted the case to the jury in a manner not prejudicial to the defendant, and that he had a fair trial. We have examined the several points assigned as error and find no prejudicial error.

Section 1626, L. O. L., relating to appeals in criminal cases, provides:

"After hearing the appeal the court must give judgment, without regard to the decision of questions which were in the discretion of the court below, or to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

The judgment of the court below is affirmed.

AFFIRMED.    REHEARING DENIED.