Argued January 12; affirmed February 9, 1932

## STATE *v.* OLSEN
(7 P. (2d) 792)

*Charles A. Hardy* and *James K. King,* both of Eugene, for appellant.

*Eugene V. Slattery,* Deputy District Attorney, of Eugene (Alta King, District Attorney, of Eugene, on the brief), for the state.

BROWN, J. This defendant and one William H. Donaldson were jointly indicted by the grand jury of Lane county, Oregon, on the charge of assault with intent to commit rape. Separate trials were had. Donaldson was acquitted, and this defendant was convicted and sentenced to serve a term of 15 years in the state penitentiary. From the judgment of conviction he appeals.

The defendant, a young man about 26 years of age, who resides at Eugene, is by occupation a writer of short stories. It appears that on the evening of June 12, 1931, he was visited by two young men friends, and, after the three had indulged in drinking intoxicating liquor, they concluded to drive to Victoria Heights, a residential section overlooking the city of Eugene, for the purpose of finding some young couple "parking" at this place, and, to use the language of the record, "cause this couple to put on what they termed a show." Near the end of the drive they found parked in an automobile a young couple who, according to the record, were former students of the University of Oregon, fellow members of the Wesley Club of the University Students, a Methodist organization, and who had also been keeping company for some time. The defendant and his companions stopped their car across the street from the parked car. As to what then took place, the alleged victim, who appeared as the principal witness for the State, testified that two of the men got out of the defendant's car; that the defendant walked over to the window of the car in which she and her companion were sitting and asked what time it was, then, with gun in hand, opened the door of the car, commanded them to get out, and proceeded to march them to the end of the road a short distance away, saying: "If you want to know what we are, we

are hijackers." She testified that defendant then asked her companion how much money he had; that they offered their captors what money they had with them, but they refused to accept it, declaring that they would accept no sum under fifteen dollars. They then offered their watches, but defendant said, "We don't want your watches. What we want you to do is to harm this girl. We won't harm her, but if you don't do what we tell you to do, there will be a rape, the damnedest rape you ever heard of happening up here." Witness' companion said, "I can't do that. What do you fellows want?" Defendant answered, "I don't want your watch," and knocked it to the ground. They next offered checks to defendant, who said, "We don't want your checks. We want you to do what we tell you to do." Defendant then commanded witness to "get down on the ground." Witness failing to obey, he said, "Get down." She then sat down on the ground, and defendant commanded, "Lay down on your back." She testified that defendant "knocked me—just hit me and shoved me down on the ground"; that her companion said, "You fellows can't do that," and asked, "What do you want?"; that he told them "he couldn't do that to me," and defendant said, "Well, if you don't do it, why, *we* will. One of us will do it, and then the next one." Then defendant said, "pull up her dress. * * * Pull it up until you show things. * * * Take down her stockings." She testified that defendant came to her and started to unfasten her stockings, and she said, "Take your hands off of me. I will unfasten my stockings." Then defendant said to her companion, "Get on her. * * * If you don't, we will shoot you." She testified that defendant "kept threatening us, and he was hitting Howard with the gun on his arm most of the time, and because he would

raise his arm every time Olsen would raise the gun to strike, and it would land on his arm. But twice he hit him on the head and once on the shoulder quite hard, and he kept threatening. He says, 'If you don't do this we will shoot you.' He said once, 'Now, do it, before I count three'; and he counted, and shoved the gun into Howard's ribs.'' She testified that defendant kept saying, "If you don't do it, *we* will''; that he further said that he would tie her companion to the tree if he wouldn't do it, and then they would both do it; that finally "he forced Howard onto me,'' and that defendant and Donaldson "each took hold of my legs, one on one and one on the other, and stretched my legs apart, and forced Howard onto me; and then Olsen put his hand in between us and tore my pants across the crotch of them—it was Donaldson that tore the pants  *   *   *, and Olsen pulled my dress up farther, clear up here.'' We omit further details of this shameless assault until we reach the point where the girl screamed and Donaldson put his hand over her mouth and commanded her to keep her mouth shut. She testified that time after time defendant declared, with much profanity, "We have fooled with you long enough.  *   *   *   We have given you a break, given you a chance to do it''; and that he finally said, "Now, *we* will do it. We have given you a chance.'' At the same time he started to pull her companion off her body, and while this was taking place she managed to get up, and fled. With defendant in hot pursuit threatening to shoot, she reached the shelter of a house in that vicinity, where she reported the matter. The sheriff and police were notified, and very soon thereafter the defendant was in custody. In describing her wounds witness stated that her knees were skinned

and bleeding, and one hand and hip were cut. She said also that her companion's head was bleeding where the defendant had hit him.

The foregoing testimony is corroborated by that of the young man who was the girl's companion on the evening in question. He testified that defendant made threat after threat in an attempt to force him to do as he commanded. He testified fully in relation to the defendant's throwing the girl to the ground, and as to his threats to shoot and kill him if he did not do as commanded. He also swore that his arm and head were severely injured by the succession of blows that were rained upon his body by the defendant with the heavy revolver.

The defendant failed to take the witness stand in his own behalf, but sought to negative the testimony adduced by the State in an attempt to establish an alibi, and by testimony of his previous good reputation.

At the close of the testimony adduced by the prosecution, the defendant moved the court to strike the testimony of the girl from the record, to direct a verdict of not guilty, and claimed that the court erred in giving the following charge to the jury:

"Ladies and Gentlemen: I instruct you that the defendant is charged in the indictment with the alleged crime of assault with intent to commit rape. Rape is the unlawful carnal knowledge of a female by force and without her consent, and the statutes of this state, among other things, provide: 'If any person shall forcibly ravish any female, such person shall be deemed guilty of rape.'

"To constitute the crime of assault with intent to commit rape there are two essential ingredients which must co-exist and be established by the evidence beyond a reasonable doubt. They are, first, an assault; second, an intent to commit the crime of rape.

"An assault is an intentional attempt to do violence to the person of another, coupled with the present ability to carry that intention into effect. Therefore, * * * if you find from the evidence beyond a reasonable doubt that the defendant on the 12th day of June, 1931, in Lane county, Oregon, with force and violence forced Jane Doe to the ground and in a position on her back; and if you further find beyond a reasonable doubt that the defendant at the point of a revolver gun and on threat to shoot John Doe, if he did threaten to shoot John Doe, compelled John Doe to attempt to have carnal sexual intercourse with Jane Doe by force and against her will, and with the felonious intent that said John Doe should have carnal sexual intercourse with Jane Doe forcibly and against her will, then the defendant would be guilty of the crime charged, even though you find that John Doe had no criminal intent to commit the act of sexual intercourse with Jane Doe at the time and place in question."

(Substitution of names in above instruction ours.)

■ We have no quarrel with the contention of defendant's counsel that this case should be heard on appeal on the same theory upon which it was heard in the court below. See *Winn v. Taylor,* 98 Or. 556 (190 P. 342, 194 P. 857), and authorities there collated.

■ In order to ascertain the foundation of the plaintiff's case herein, let us examine the indictment. That instrument accuses the defendant jointly with one William H. Donaldson of the crime of assault with intent to commit rape, and avers that defendant and Donaldson, at a time and place therein named, acting together, feloniously assaulted a named female more than sixteen years of age, with the intent "to forcibly ravish and carnally know" her. The defendant was arraigned and put upon trial. The testimony tended to prove each and every material allegation contained in the indictment; and, as a result of the trial, the jury returned

into court a verdict of guilty as charged in the indictment. This is not a case where the defendant was charged with one crime and convicted of another. If the testimony given by the victim and her companion is true, the charge contained in the indictment was established beyond any doubt. The verdict was responsive to, and covers, the crime charged. The assault committed was not a mere assault and battery, or an indecent assault, but according to the defendant's own statements made during the commission of the offense, he threatened and declared his intent carnally to know the body of the struggling girl. She testified that she was flung to the ground, whereupon this defendant and his confederate each took one of her limbs and spread them apart, and commanded her companion to outrage her. Failing in this they, themselves, then undertook to ravage her body, but, at an unguarded moment, she escaped and fled for refuge, this defendant, gun in hand, in hot pursuit.

This testimony is amply sufficient to justify the verdict returned into court by the jury. The motion for a directed verdict of not guilty was properly denied, as was the motion to strike from the record the testimony given by the young woman.

■ The court instructed the jury that "an assault is an intentional attempt to do violence to the person of another, coupled with the present ability to carry that intention into effect." This definition has been approved by our court in *State v. Godfrey,* 17 Or. 300 (20 P. 625, 11 Am. St. Rep. 830), and *State v. Cancelmo,* 86 Or. 379 (168 P. 721). See, also, *State v. Selby,* 73 Or. 378 (144 P. 657).

■■ To establish the charge of assault with intent to commit rape, two elements are essential: First, the

assault, second, the intent. That intent is an essential element of an assault with intent to commit rape, and must in some way appear, see 1 McClain on Criminal Law, § 463. A conviction on an indictment for assault with intent to ravish will be sustained where the assault and the intent co-existed, even though the offense was not consummated: 1 Wharton's Criminal Law (11th Ed.), § 748.

According to the undisputed testimony of record, the defendant personally assaulted the girl in question. And, accepting as true his own statement as to his avowed intention and purpose, that intention was to ravish the body of his captive.

Section 14-227, Oregon Code 1930, provides:

"If any person shall assault another with intent * * * to commit rape upon such other * * *, such person, upon conviction thereof, shall be punished * * * ."

█ But the defendant sets up as a defense the claim that the girl's companion, who was forced upon her body by the defendant and his confederate, had no intention of carnally knowing her body, and that for that reason the crime of assault with intent to commit rape was not committed.

The principal case relied upon by the trial judge in disposing of this contention is *State of North Carolina v. Dowell,* 106 N. C. 722 (11 S. E. 525, 19 Am. St. Rep. 568, 8 L. R. A. 297). In that case the question at issue concerned the sufficiency of the criminal intent to sustain a conviction of one who compels another, through fear of death, to make an actual attempt to commit a like crime; and, in delivering its opinion therein, the court wrote:

"Ordinarily, precedent is grateful to the judicial mind, as something approved and steadfast, on which

it may rest with confidence; but sometimes cases arise of such exceptional enormity that, for the fair name of humanity, the judge would hope to find no counterpart in criminal annals. We incline to believe that the case under consideration is one of such bad eminence. Unmatched in iniquity, as it appears to be, it is hoped, however, that the application of a few elementary principles will harmonize the conclusion to which we have arrived, not only with our moral conceptions of what should be the law, but also with its strict, formal administration.

"The facts are abhorrently simple. The white husband of a white wife, under menace of death to both parties in case of refusal, and supporting his threat by a loaded gun held over the parties, constrains a colored man to undertake, and his wife to submit to, an attempted sexual connection. The details of this shocking transaction are so disgusting that we will not stain the pages of our reports with their particular recital. Suffice it to say that, under the coercion of the defendant, Lowery, the colored man, did actually make the attempt. Indeed, he did everything necessary to constitute the crime of rape except actual penetration. Fortunately the fright and excitement rendered him incapable of consummating the outrage, which, as we understand the case, he would otherwise have perpetrated; and, alike fortunately, at, perhaps, the critical moment, the gun discharging itself in the hands of the unnatural husband, the enforced assailant was enabled to effect his escape.

\* \* \* \* \*

"We are clearly of the opinion that the unlawful act committed in pursuance of the combined intents of the defendant and his enforced instrument are amply sufficient to sustain the conviction."

In this case the defendant further insisted that because he was the husband of the prosecutrix he was not guilty of any crime, thus attempting to justify his

iniquitous deed by pointing to the marital relation, the obligations of which he had violated by every law of God and man. But the court held that, in respect to the offense charged, the husband stood upon exactly the same footing as would a stranger.

We are in complete accord with the holding in this case.

In the case of *Commonwealth v. Shaw,* 134 Mass. 221, we are taught that it is no defense to an indictment for an assault upon a child with intent carnally to know and abuse her, that the defendant, in making the assault, was unable to accomplish his purpose of ravishing her. The child was under the age of ten years. The evidence tended to prove that she was thrown down upon her hands and knees on the floor by her assailant; that the defendant, while the child was in that position, attempted to have carnal knowledge of her body; and that he lacerated her private parts and caused blood to flow therefrom. At the trial the defendant introduced evidence tending to prove that it would have been a physical impossibility for him to have carnal knowledge of the child in the position described, and asked the judge to rule that "if from the position of the child it was physically impossible for the defendant to ravish her, he cannot be convicted of an assault with intent to carnally know and abuse her." But, on the contrary, the court ruled that, "if the defendant assaulted the child with intent carnally to know and ravish her, the jury would be authorized to convict him, although he might have found it, in making the attempt, physically impossible to consummate his intent by actual sexual intercourse with the body of the child in the position before described."

With relation to the subject of Crime Prevented by Fact Unknown to Accused, we take the following from 8 R. C. L., "Criminal Law," § 298:

"The question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design. All the authorities hold that, in order to constitute an attempt, the act attempted must be a possibility. But this rule of the law applies only to a case where it is inherently impossible to commit the crime. It has no application to a case where it becomes impossible for the crime to be committed, either by outside interference or because of miscalculation as to a supposed opportunity to commit the crime which fails to materialize. In short, it has no application to the case when the impossibility grows out of extraneous facts not within the control of the party."

*State v. Beal,* 37 Ohio 108 (41 Am. Rep. 490), is an interesting instructive case dealing with assaults that fail to accomplish the purpose of the assailant. Among other things, the court there said:

"Where a statute makes an assault upon a person with intent to steal from his pocket, a criminal offense, it is no answer to an indictment charging such offense that nothing was found in the pocket. It has been repeatedly held that, where the hand is thrust into the pocket with intent to steal what may there be found, the offense is complete whether anything be found or not: *State v. Wilson,* 30 Conn. 500; *Hamilton v. State,* 36 Ind. 280 [10 Am. Rep. 22]; *Commonwealth v. Jacobs,* 9 Allen [Mass.] 274; 1 Bishop, Crimminal Law, § 743, et seq."

In *State v. Kendall,* 56 Kan. 238 (42 P. 711), the court instructed the jury as follows:

"The charge in the information in this case not only includes a charge of rape upon the said Emma Cathcart, but it also includes the charge of assault

with intent to commit rape upon her, and although you should have a reasonable doubt as to whether the defendant actually committed a rape upon her, yet if you believe from the evidence, beyond a reasonable doubt, that he made an assault upon her with the intent to commit a rape—that is, that he caught hold of her and used force or violence and threats, with the intent to carnally know her, then and in that case you should find him guilty of an assault with intent to commit a rape, and in that case it would make no difference that he might have failed to accomplish his purpose."

This instruction was held to be correct upon appeal.

In the instant case there was no collusion, no common interest, no conspiracy, no complicity existing between the defendant and the girl's companion. They were not confederates in crime, and, as the record discloses, the chief doer was the defendant.

But the guilt of the defendant does not rest upon the intention entertained by the girl's comrade. It was the defendant, not the friend of the victim, who carried the revolver. It was the defendant who commanded the girl to lie on her back upon the ground, and who pulled up her dress. It was the defendant and his confederate, Donaldson, who parted the limbs of the injured girl and tore her underwear. It was the defendant who commanded the girl's companion, under threat of his life, to perpetrate the crime upon her body, and who, on failing in his diabolical design, proceeded to consummate the act himself. And when, in an unguarded moment, the victim of the abhorrent plan fled from the scene in an attempt to preserve her honor, it was the defendant who gave chase with gun in hand. All these were acts that are criminal; acts that the law punishes. And these overt acts were committed by the defendant with the felonious intention of violating the chastity of this young woman. The record clearly

establishes that the defendant and his confederate assaulted, beat, and bruised the girl's companion with a large revolver which they used as a bludgeon, in a futile attempt to force him to commit the infamous crime. But it is plain to the mind of the writer that, regardless of the intention of the girl's comrade, this defendant is guilty of the crime charged in the indictment; and the fact that he failed to accomplish his lascivious purpose was not due to any lack of effort on his part, nor does it in any sense wipe out, or even reduce, the crime.

The trial court very properly instructed the jury that if the defendant committed the flagrant acts enumerated in the charge, with the felonious intent that the young man in question should carnally know the body of his companion, then, in that event, the defendant would be guilty as charged, regardless of the intent entertained by the young man himself.

This case should be affirmed. It is so ordered.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.