Argued September 19, affirmed October 17, 1951

# STATE OF OREGON *v.* LANEGAN

### 236 P. 2d 438

*Frank H. Pozzi,* of Portland, argued the cause for appellant. With him on the brief was Nels Peterson, of Portland.

*James A. Norman,* District Attorney for Coos County, and *John Pickett,* Deputy District Attorney, argued the cause and filed a brief for respondent.

Before HAY, Acting Chief Justice, LUSK, LATOU-RETTE, WARNER, and TOOZE, Justices.

HAY, J.

Howard Lanegan appeals from a judgment of conviction of the crime of assault with intent to . rob. § 23-427, O.C.L.A.

The evidence on the trial showed that Jack Edward Davis and Patsy Davis, his wife, while asleep in the bedroom of their residence at North Bend, Oregon, were awakened at about 5 a.m. on August 18, 1950,

by a man standing beside their bed and shining the light of a flashlight in their faces. The man held the light upon Davis, and from a distance of about 18 inches menaced him with a short-barreled, silver-plated revolver of .32 caliber, and demanded money of him, saying: "This is a holdup." Davis told him that he had no money, and the man said he had better get some. Davis thereupon got out of bed, and, being cautioned by the intruder "not to try anything," went into the living room, where he had left his wallet on a writing desk, and demonstrated that the wallet was empty. The would-be robber intimated that, if Davis couldn't get some money, it was too bad, but he would have to shoot him. After some further colloquy, Davis was ordered to go back to bed, which he did. The man said, " * * * I am a Communist and I haven't got any respect for life, and I am sorry but I will have to shoot you." He pointed the revolver at Davis's head, but did not shoot. He said: "You people are poor, aren't you? * * * I have money, if you need money." There was some further conversation, after which, still pointing the revolver at Davis, the man shook hands with both his intended victims, said that he would have to be going, and left, slamming the door behind him. He had been in the home for approximately 25 minutes. He talked with a foreign accent which Mrs. Davis thought was Mexican.

Twelve days afterwards, the defendant was arrested for the crime, and taken to the city jail at North Bend. He was left alone in a lighted room. Later, Mr. Davis walked through the room and identified him to the police as the person who had attempted to rob him.

■ Chief of Police Kolkhorst of North Bend testified that he was present at the time of the identification of

defendant by Mr. Davis. Over objection of defendant that the matter was not within the issues, he said that he had had Davis at his office prior to that time to observe other suspects, and that he did not identify any of them as being the culprit. It is argued that such testimony was irrelevant and incompetent and had no logical relation to the facts in issue. It must be conceded that it was irrelevant and therefore incompetent. Moreover, it was hearsay. *State v. Evans*, 98 Or. 214, 234, 192 P. 1062, 193 P. 927; *People v. Reeves*, 360 Ill. 55, 195 N.E. 443, 447; 16 C.J., Criminal Law, § 1239.

■ Kolkhorst also testified that Mrs. Davis identified defendant by his photograph, which was shown to her along with photographs of a number of other persons. Defendant objected to such testimony on the grounds that it was hearsay and not the best evidence. Evidence of extrajudicial identification of a defendant by a person other than the witness who testifies to such identification is hearsay, and the objection to such evidence in this case should have been sustained. *State v. Evans*, supra; *Gilbert v. Commonwealth*, 221 Ky. 692, 299 S.W. 569; *State v. Grasswick*, 77 Mont. 326, 250 P. 613, 614; *People v. Lukoszus*, 242 Ill. 101, 89 N.E. 749, 751; *People v. Infantino*, 224 App. Div. 193, 230 N.Y.S. 66, 71.

■■ As a general rule, the receipt of incompetent evidence is not prejudicial error where the fact sought to be proved is fully and clearly established by other and competent evidence. 5 C.J.S., Appeal and Error, § 1731 a; *Pitts v. Crane*, 114 Or. 593, 603, 236 P. 475; *Murphy v. Deal*, 68 Or. 18, 20, 136 P. 658; *Meridianal Co. v. Moeck*, 121 Or. 133, 140, 253 P. 525. The rule is applicable in criminal as well as civil cases. *State v. Folkes*, 174 Or. 568, 606, 150 P. 2d 17, cert. den., 323

U.S. 779, 89 L. ed. 622, 65 S. Ct. 189. See also *State v. Boloff,* 138 Or. 568, 594, 4 P. 2d 326, 7 P. 2d 775, in which this court applied a rule substantially similar. The Davises had an excellent opportunity to become well acquainted with defendant's appearance under circumstances calculated to impress it upon their minds, and upon the trial both positively identified him. Such positive identification, in our opinion, cured the errors complained of respecting Kolkhorst's testimony of the extrajudicial identification of defendant by the Davises.

■ Mrs. Davis testified that she had identified defendant by picking out his photograph from among a number exhibited to her by the district attorney and the chief of police. This was objected to upon the ground that the photographs so shown to the witness were themselves the best evidence.

Defendant, in this connection, relies upon *State v. Houghton,* 43 Or. 125, 131, 71 P. 982, which, however, does not appear to touch the point. In that case, the testimony to which objection was made was that of a detective officer, to the effect that the prosecuting witness (not the officer himself) had identified defendant by a "rogues' gallery" picture. Such testimony was of course hearsay and improper, and we so held. We held further that the error was not cured by the testimony of the prosecuting witness, which "did not go into details," and "could perhaps be regarded only as a circumstance attending the search for the guilty parties."

In the case at bar, the testimony of Mrs. Davis was properly received. 2 Wigmore, Evidence, 3rd ed., § 660. In a somewhat analogous situation, we held in *State v. Wong Wen Teung,* 99 Or. 95, 102, 195 P. 349, that it was competent for a witness to testify that she had been

able, upon observing a group of persons which included the defendant and a number of others of the same race as he and of about his size and build, to identify the defendant as the person whom she had seen committing the criminal act for which he was being tried. In that case, moreover, we distinguished such a situation from that in *State v. Houghton,* supra, 43 Or. 125, 71 P. 982.

Defendant argues that, in any event, the photograph identified by Mrs. Davis should have been introduced in evidence. He cites no authority for this, but, even if we assume for the sake of argument that the point is well taken, the error, if any, was cured by an instruction which the court gave to the jury, to the effect that the testimony of the chief of police that Mrs. Davis had identified defendant through the use of photographs, as well as the testimony of Mrs. Davis that she had identified defendant by his photograph, was hearsay and incompetent, and that it was the jurors' duty to disregard such testimony, as it had been stricken from the record and was withdrawn from their consideration. This, in our opinion, was a sufficiently emphatic instruction to disregard the testimony as to leave no doubt in the jurors' minds that the evidence was out of the case and was not to be considered by them for any purpose. *State v. Goff,* 71 Or. 352, 359, 142 P. 564; *State v. McDaniel,* 39 Or. 161, 183, 65 P. 520; *State v. Pointer,* 106 Or. 589, 601, 213 P. 621; 53 Am. Jur., Trial, § 671. Moreover, if counsel for defendant had considered the instruction insufficiently responsive to his objections, he should have taken exception thereto or requested that a more definite or positive direction be given. As he did not do so, we must assume that he was satisfied with the instruction. *State v. Pointer,* supra, at p. 602.

■ A question is raised respecting the propriety of the procedure which was used by the chief of police in exhibiting suspects to the witness Davis for identification. It seems that Davis was brought to the police station to observe certain suspects in a group, and afterwards to observe defendant alone. It is urged that evidence of such procedure had a tendency to indicate to the jury that Davis had identified defendant in what amounted to a police line-up, which was not so, as, in a police line-up, several persons are exhibited to the observer in a group, whereby identification of one or more of the group has the appearance of being unaided by suggestion. The method employed in the present case is subject to criticism, but it does not appear to have been condemned by the authorities as prejudicial.

> "In *identifying persons or material objects,* it is of course more effective if the thing to be identified is so placed with others that the witness' selection appears to be unaided. This is particularly important in the identification of an *accused,* where the witness is shown a photograph beforehand. Nevertheless, no general rule has required this,—partly because of its frequent impracticability, partly because the lack of such a precaution plainly enough detracts from the value of the testimony, and partly because the witness has usually had so many prior opportunities of private verification that such a public test would often give a false appearance of spontaneous and unaided selection." 3 Wigmore on Evidence, 3rd ed., § 786, subd. (4).

See also *People v. Barad,* 362 Ill. 584, 200 N.E. 858, 860; *People v. Vaughn,* 390 Ill. 360, 61 N.E. 2d 546, 548.

A witness who was acquainted with the accused, and who had seen him at about 2 o'clock in the morning of the day of the attempted robbery, testified that he was at that time wearing a cap. The witness asserted

that a certain cap, which the state had had marked for identification, was about the type of cap that defendant had worn on that occasion. The cap was afterwards shown to Mrs. Davis. She testified that defendant had worn "a sort of a cap that was pulled down over his forehead and to about the tops of his ears," and that the cap shown her was similar thereto.

■ At the beginning of the trial the defendant, by motion to suppress evidence, challenged the validity of a search of his place of residence by the police, wherein, under a void search warrant, they seized certain articles of personal property. The court, in chambers, sustained the motion. The evidence suppressed did not include any cap or other headgear. Defendant contends that the court erred in refusing, on motion, to strike the testimony of the witnesses in identification of the cap as being similar to that worn by defendant. His argument is that such testimony was permitted upon the assurance of counsel for the state that it would be properly connected with the state's case, and that such connection was not made. The cap was offered in evidence by the state, but the offer was rejected. The jury, in due course, was specifically instructed that the cap had not been admitted in evidence, and that it should not be considered as evidence in the case. It is suggested that the cap was seized from the defendant's living quarters at the time of the seizure of the evidence which the court suppressed. But even if that were so, if the defendant desired to have the cap excluded, he should have moved before the trial to suppress it as evidence. *State v. McDaniel,* 115 Or. 187, 200, 231 P. 965, 237 P. 373. It was competent for the state to prove that the defendant had been wearing a cap similar to the one it attempted

to introduce into evidence. *State v. Lenhardt,* 152 Or. 372, 375, 53 P. 2d 720. In the state of the record, we think that the cap should have been received. Its exclusion was more than defendant was entitled to ask. In our opinion, under the circumstances, the fact that the court did not instruct the jury to disregard the evidence of the witnesses in identification of the cap was not error. In *State v. Sing,* 114 Or. 267, 285, 229 P. 921, a written record of the sale of a certain revolver was received in evidence on behalf of the state upon the representation of the special prosecutor that he would follow it up with testimony connecting the defendant with its purchase. He failed to do so, and, at the conclusion of the state's case in chief, the defendant moved to strike the evidence from the record, and that the jury be instructed not to take into consideration any of the testimony of a witness who had identified the revolver. The court thereupon instructed the jury "not to consider the exhibit as evidence in the case, or to allow it in any way to influence them in arriving at a verdict." We held that no error was committed; that the court had sustained the defendant's motion and had instructed the jury as requested by him. This, notwithstanding the fact that the court's instruction had reference only to the exhibit itself, and not to the testimony of the witness relating thereto.

Parenthetically, in relation to the identification of accused as the guilty party, we may mention that the same witness who testified that he saw him wearing a cap on the morning of the attempted robbery, testified further that, on that occasion, defendant had in his possession a "weapon" (he did not say a revolver or a pistol) having a "bright, shiny-like" barrel of about two or three inches. He "kind of imitated a

Mexican" in his speech, but the witness "had heard him talk plain American before."

Error is assigned upon the giving of the following instruction:

"An assault is an intentional attempt to do violence to the person of another, coupled with the ability to carry that intention into effect. And, in this connection, if you shall find from all of the evidence in the case that Howard Lanegan, being then and there armed with a revolver, did assault Jack Davis by deliberately pointing said revolver at and towards Jack Davis at close range, and Jack Davis then being within shooting distance, and with the intent to rob Jack Davis under the circumstances narrated in the indictment, and if you further find from all the evidence in the case that such acts on the part of the defendant then and there put Davis, while acting as an ordinary prudent person, in fear of death or great bodily harm, then the defendant by such conduct, if there was such conduct, impliedly represented that such revolver was loaded and capable of being discharged, and that the law would presume that the revolver, if so used, was a loaded revolver capable of being discharged. This presumption would not be a conclusive one, but one for your consideration. I want to re-read that portion with reference to the presumption because I don't know whether you got it or not, with the confusion outside. This presumption would not be a conclusive one, but is one for your consideration, with all of the other evidence in the case."

To this instruction defendant excepted as follows:

" * * * the defendant excepts to the Court's instructions as to the assault within shooting distance of Jack Davis and putting Jack Davis within fear of death, and the instruction there included of a presumption that the gun was loaded but that not being a conclusive presumption, upon the grounds

that that is not the law that would constitute the crime of assault, it does not include the reaction as to the witness Jack Davis as to whether or not he was in fear, and that there is no presumption as to whether or not the gun was loaded but that the law at most would draw a mere inference as to a loaded gun."

Defendant argues that, under our law, the elements of a criminal assault are, as set forth in *State v. Olsen,* 138 Or. 666, 672, 7 P. 2d 792, "an intentional attempt to do violence to the person of another, coupled with the present ability to carry that intention into effect." That being so, he contends that constructive force is not an element of a criminal assault with intent to rob, except in cases under § 23-429, O.C.L.A., in which the element of "putting in fear of force and violence or assault" is specifically included.

■ The portion of the instruction to which defendant specifically excepts is that which required the jury to find, before it could convict, that the defendant's acts as charged in the indictment put Davis in fear of death or great bodily harm. Although a charge of robbery implies the taking of property from another by violence or by putting him in fear, *State v. Parr,* 54 Or. 316, 324, 103 P. 434, that portion of the instruction was unnecessary, introduced an element not found in the statute, and placed upon the state a burden which it was not required to sustain in proving its case. Defendant contends that the instruction told the jury to find him guilty even though no legal assault had been committed. We disagree. The instruction required the jury to find more than an assault with intent to rob, as defined by § 23-427, O.C.L.A., but included all the statutory elements of that crime.

It is suggested that it is not a criminal assault to point an unloaded gun at another. That is true. *State v. Godfrey,* 17 Or. 300, 303, 20 P. 625, 11 Am. St. Rep. 830. However, when an assault with intent to rob is made by threatening the intended victim with a firearm within carrying range, the jury may infer that the weapon was loaded. *State v. Ragan,* 123 Or. 521, 532, 262 P. 954. In *State v. Parr,* supra, 54 Or. 316, 322, 103 P. 434, it was said that, under such circumstances, "the law will presume that the gun so employed was loaded." See also *State v. Milo,* 126 Or. 238, 242, 269 P. 225. The use in the Parr instruction of "presume" rather than "infer" was criticized as "unfortunate" in *State v. Ragan,* supra, but was not held to be error. In the instruction under consideration here, "presume" is used also, but the jury of laymen, not having been handicapped by an appreciation of the technical distinction in Oregon law between a presumption and an inference, certainly was not misled. Defendant asserts that to charge that there was a presumption that the revolver was loaded was reversible error, in the absence of proof that it was actually loaded. But, as the cited cases indicate, this is not so.

The court instructed as follows:

"There has been some evidence brought into this case which tends to show that the defendant had been convicted of prior offenses, and in this connection I charge you that you can only consider such testimony for the purpose of determining the credit to be given to the testimony of the defendant Howard Lanegan. You cannot consider such testimony or evidence as a circumstance from which you may infer guilt of the defendant in this case but, as I repeat, only as a matter of affecting the credibility of the defendant as a witness in his own behalf in the case."

■ The giving of this instruction was excepted to on the ground that it was repetitious. Defendant argues that, by emphasizing the fact that the only purpose of the admission of evidence tending to show that he had been convicted of prior offenses was so far as it affected his credibility as a witness, the instruction gave undue prominence to one phase of the controversy. 53 Am. Jur., Trial, § 559. The repetition complained of was extremely mild, and surely did not have the effect which defendant suggests. If it was erroneous, the error was in defendant's favor. Certainly there was no reversible error involved. *Bronkey v. Olson,* 145 Or. 662, 666, 28 P. 2d 243; *Sine v. Melhorn,* 168 Or. 688, 690, 126 P. 2d 853.

Other errors were assigned, but were waived by counsel for defendant on oral argument.

We are of the opinion that the record is free from prejudicial error. The judgment is affirmed.