THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM LUKOSZUS, Plaintiff in Error.

*Opinion filed October 26, 1909.*

1. CRIMINAL LAW—*when accused is not entitled to discharge for the want of prosecution.* In determining whether one indicted for murder is entitled to be discharged for failure to bring him to trial at a term of court beginning within four months of the date of his commitment, the time he has been in jail on another and different charge cannot be counted.

2. INDICTMENT—*an indictment for homicide should charge the means whereby the life was taken, if known.* In an indictment for homicide the means whereby life was taken must be averred if known, and the instrument with which the blow is shown to have been struck must not be essentially different from that alleged in the indictment.

3. SAME—*allegation as to which hand instrument was held in is unnecessary.* In an indictment for homicide charging that death was caused by striking with an instrument it is not necessary to allege in which hand the assailant held the instrument, nor is it necessary to prove such allegation if it is made.

4. TRIAL—*right of defendant to question witness giving unexpected answer.* Where a witness for the defendant called to prove good reputation for peace and quietness unexpectedly answers that

such reputation was bad, counsel for defendant should be allowed to ask the witness if he had not talked with counsel about the case, and upon receiving an affirmative answer should be allowed to ask the witness if he did not say that the defendant's reputation for peace and quietness was good.

5. SAME—*general rule where witness gives unexpected answer.* Where a witness gives the party calling him an unexpected answer damaging to such party, the latter has the right either to refresh the memory of the witness if he was forgetful or to probe his conscience and move him to relent and speak the truth if he was erring.

6. EVIDENCE—*what amounts to violation of rule against hearsay evidence.* Where the defendant's connection with the crime charged rests on the testimony of one witness, it is error to permit the police officer who arrested the defendant to testify that he got the description of the defendant from such witness and that the latter identified the defendant.

7. SAME—*what tends to prove charge of indictment as to the means of injury.* Testimony by the coroner's surgeon who made the post mortem examination that the skull of the deceased was fractured, that the cracks in the skull were due to external violence,—to a blow on the skull,—and that the blow was with a blunt instrument, such as a stick, butt of a gun, gas pipe, hammer or anything like that, tends to prove a charge of the indictment that the striking was with a blunt instrument.

8. ALIBI—*what does not amount to making defense of alibi.* Where a witness merely denies that he participated in any way in the crime charged and contradicts the testimony of the witness who claimed to identify him, the fact that he testified that after leaving a certain saloon he went across the street to his boarding house and went to bed does not amount to making the defense of *alibi,* where he called no witness to prove that he was not at the scene of the crime.

9. SAME—*theory of defense of alibi.* The defense of an *alibi* does not, in theory, deny that the crime was committed, but is designed to prove that the defendant, during the whole time, was so far from the place where the crime was committed that he could not have participated in it.

10. INSTRUCTIONS—*if instruction is pointed out to be defective it should not be given.* Instructions should be correct, and when the defects in an instruction have been pointed out by the Supreme Court it should not be given, even though it may not have been considered ground for reversal of the judgments in the cases wherein it was considered.

11. SAME—*when instructions relating to alibi are prejudicial.* In a trial for murder, instructions which together inform the jury that the defendant has made the defense of an *alibi* when he has not, in fact, made such defense, and that such a defense is one tending merely to cast a reasonable doubt on the case made by the prosecution, are prejudicial to the defendant.

12. APPEALS AND ERRORS—*when admitting evidence for People after defendant has closed will not reverse.* It is within the discretion of the trial court to permit the People to introduce cumulative testimony in the nature of evidence in chief after defendant has introduced his evidence, and the court's action will not be considered as error unless its discretion was abused.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

FRANK T. HUENING, and MARTIN WALSH, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and JOEL C. FITCH, (GEORGE M. POPHAM, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

William Lukoszus, plaintiff in error, was indicted by the grand jury of Cook county, jointly with Anton Bartuszes and Joseph Pomedites, for the murder of Peter Buczinski. Bartuszes and Pomedites were never apprehended, but the plaintiff in error was tried in the criminal court of said county and found guilty by a jury and sentenced to the penitentiary for twenty-four years. He sued out the writ of error in this case and the record has been brought here for review.

At the July term, 1908, of the criminal court the defendant moved the court to set him at liberty under section 18, division 13, of the Criminal Code, for the reason that he had not been tried at a term of the court having

jurisdiction of the offense, commencing within four months of the date of his commitment for the crime. He filed his affidavit that he was arrested on February 18, 1908, and the next day was delivered to the sheriff of Cook county and had been in jail from that time continually under this charge. On a hearing of the motion the court found the facts to be that the defendant was arrested under the name of William Lacortis on February 18, 1908, and on February 19, 1908, he was committed to jail on a charge of robbery under a *mittimus* from the municipal court of Chicago; that his examination on such charge was continued several times, and at each continuance he was again committed under a *mittimus* of the said municipal court until March 20, 1908, when he was taken before the municipal court and discharged from custody; that he was never again returned to or received in jail on said charge of robbery; that Peter Buczinski, alleged to have been murdered by the defendant, died on March 11, 1908; that on March 12 and 20, 1908, an inquisition was held by the coroner, and on March 20, 1908, the defendant was held upon the verdict of the coroner's jury and committed to jail on the charge of murder; that the indictment was returned on April 17, 1908, and that from February 19 to March 20, 1908, the defendant, under the name of William Lacortis, was kept in jail by virtue of process of the municipal court on a charge of robbery and not for the offense charged in the indictment in this case. The court denied the motion and the defendant was tried at the July term, 1908, which commenced on July 6, within four months of the date of the commitment of the defendant to jail for the offense for which he was tried. He was not entitled to be discharged because he had been in jail on another and different charge, and the court did not err in refusing to discharge him.

The following facts were proved without controversy at the trial: Peter Buczinski, the deceased, and Mike Wajankowski were in the saloon of John Szatunas, at 4528

Paulina street, Chicago, in the evening of February 15, 1908, and remained there until about 12:30 A. M. of February 16. The deceased spent seventy cents for liquor and gave a five-dollar bill in payment, receiving $4.30, of which amount he put four dollars in his vest pocket and the balance in his trousers pocket. During the evening the defendant was in the saloon three times, the first time being about 7:00 o'clock. He boarded directly across the street, at 4519 South Paulina street, and he went there for his supper and came back to the saloon after his supper. He went out again, and came back the third time about 11:00 or 11:30. Anton Bartuszes and Joseph Pomedites were also in the saloon and went out after the defendant came back the third time. He was acquainted with them, and he left the saloon shortly after they did, at about 12:00 o'clock or a little later. When the deceased and Mike Wajankowski left the saloon, at about 12:30 o'clock, they went south on the sidewalk, and Wajankowski saw two men standing between two houses, close to a fence, with sticks or clubs in their hands. When the deceased and Wajankowski had gone perhaps thirty feet past the two men, Wajankowski stepped into the street and called the deceased to do so, and a third man came up to deceased from behind and struck him three times on the back of the head and knocked him down. The two men who were seen between the houses came out and ordered Wajankowski to get away. The men kicked the deceased, searched his pockets and ran away. The deceased got up, put his hat on his head and ran home. His skull was fractured, and he died March 11, 1908, from septic pneumonia resulting from the wounds and fracture.

The dispute at the trial related to the participation of the defendant in the crime. Wajankowski testified that the person who assaulted and struck the deceased was the defendant, while the defendant testified that he had nothing to do with it. There were no important circumstances of corroboration of either witness. The identification of the

defendant by Wajankowski was positive, and the defendant testified that he left the saloon about 12:00, or a little after, and went to his boarding house across the street and went to bed; that he slept with Mike Zebelis, but that Zebelis was not in at the time and he heard him come in afterwards; that he had nothing to do with the assault; that he did not go out of the saloon with Bartuszes and Pomedites and did not know whether they and Charles Merkels went out together or not. Wajankowski failed to recognize or identify the other two men, although he knew Pomedites, and the defendant was contradicted by Zebelis as to defendant having come in to their room first. Zebelis testified that he was at home when the defendant came in, but that fact had no direct relation to the perpetration of the crime. The truth of the charge against defendant rested almost wholly upon the identification by Wajankowski and the contradiction by the defendant, and it will be seen that the evidence was such as to make it important that the rulings and instructions should be correct.

There were two counts in the indictment, and in the first the assault was charged to have been made with a wooden instrument, and in the second the charge was that it was made with a blunt instrument, a more particular description of which was to the jurors unknown, which said instrument was held in the right hand of each of the three defendants. Wajankowski testified that he did not know what the striking was done with, and there was no evidence that the instrument was held in the right hand of the defendant. The coroner's surgeon who made the post-mortem examination testified that the skull had been fractured; that the cracks in the skull were due to external violence,—to a blow on the skull,—and that it was with a blunt instrument, such as a stick, butt of a gun, gas pipe, hammer, or anything like that. This evidence sustained the charge in the indictment that the striking was with a blunt instrument. In an indictment for homicide the means whereby life was

taken must be averred if known, and the instrument with which the blow was struck must not be essentially different from that alleged in the indictment. (*Guedel* v. *People,* 43 Ill. 226.) It is usual, in such cases, to allege in the indictment the hand in which the accused held the instrument with which the wound was inflicted, but it is not necessary to do so, and if it is alleged it is not necessary to prove it. (*Commonwealth* v. *Costly,* 118 Mass. 1; *Commonwealth* v. *Robertson,* 163 id. 90; 10 Ency. of Pl. & Pr. 130.) Such an allegation is not necessary to advise the defendant of the charge which he has to meet nor to fully describe the crime, and is therefore not material.

The defendant called John Szatunas, the saloon-keeper, for the purpose of proving that the previous reputation of the defendant for peace and quietness had been good, but the witness, when interrogated, stated that he knew what his reputation was in that respect, and that it was bad. The defendant's attorney then asked the witness if he had not talked with him about the case, and the witness answered yes, and was then asked if he did not at that time tell the attorney that the reputation of the defendant for peaceableness and quietness was good. The court sustained an objection to the question. The defendant had a right to show that the witness unexpectedly gave testimony against him at variance with statements made before the trial, and had a right to call the attention of the witness to his former statement for the purpose of refreshing his memory or awakening his conscience. Of course, the defendant was surprised at such an answer from his witness, and he had a right to either refresh the memory of the witness if he was forgetful or to probe his conscience and move him to relent and speak the truth if he was willfully erring. *Chicago City Railway Co.* v. *Gregory,* 221 Ill. 591; 1 Greenleaf on Evidence, sec. 444; 10 Ency. of Pl. & Pr. 318.

In the examination of the police officer who arrested the defendant the witness was asked if anyone gave him a de-

scription of the defendant. The court overruled an objection, and the witness answered that he got the description from Mike Wajankowski. The witness was then asked if that was the man he took the defendant to, and he answered that was the man they took the defendant to to identify him. The connection of defendant with the crime rested on the testimony of Wajankowski, and it was error to permit the police officer to testify that he got a description of defendant from Wajankowski. The testimony amounted to the same thing as permitting one witness to testify that the other witness told him the defendant was the man. The rule against hearsay was violated, and the testimony of the officer amounted to a corroboration of Wajankowski's testimony identifying the defendant as the man who struck the deceased.

After the prosecution closed its case and the defendant introduced his evidence the court permitted the prosecution to call a witness against the objection of the defendant. It was contended that the testimony was in rebuttal, but it was not. It was cumulative and of the nature of evidence in chief, but it was in the discretion of the court to admit the evidence. (1 Thompson on Trials, 346; 8 Ency. of Pl. & Pr. 131.) The action of the court would only be considered error in case the discretion was abused, and in this instance we cannot say that such was the case.

The court gave, at the request of the prosecution, instructions numbered 18 and 19 on the subject of an *alibi,* and therein stated that the defense of an *alibi,—i. e.,* that defendant was at another place at the time it was claimed the offense was committed,—was in part relied on by the defendant. No such defense was made, and the defendant did not produce a single witness to testify that he was at some other place when the crime was committed. The defense of an *alibi* does not, in theory, deny that the crime was committed, but is designed to prove that the defendant during the whole time was so far from the place where the

crime was committed that he could not have participated in it, and that defense was not made or set up in any way. The defendant simply denied any participation in the crime and contradicted the testimony of Wajankowski that he assaulted or struck the deceased. The instructions placed the defendant before the jury as setting up the defense of an *alibi,* and the nineteenth characterized that defense as one tending merely to cast a reasonable doubt on the case made by the People. The eighteenth instruction was in two paragraphs, and was the same one that was given in *People* v. *Probst,* 237 Ill. 390, and there held not to be ground for a reversal. The nineteenth instruction is the same one given in *Ackerson* v. *People,* 124 Ill. 563, and *Sheehan* v. *People,* 131 id. 22, and it is conceded by counsel for the People to be subject to criticism. In both cases it was condemned so far as it informed the jury that the defense of an *alibi* tends merely to cast a reasonable doubt upon the case made by the .People, but in view of the facts of those cases and other instructions it was held that no harm was done. Instructions ought to be correct, and after defects in an instruction have been pointed out it ·should not be given, although it may not have been considered ground for reversing a judgment in a particular case. It would be just as proper and accurate as a statement of the law to say that any other defense merely tends to cast a reasonable doubt upon the case made by the People. This case is different from either of the others in the fact that no defense of an *alibi* was made, and the statement that the defendant was making that defense and that it was one which merely tended to cast a reasonable doubt on the case made by the People was injurious to the defendant.

For the errors pointed out the judgment must be reversed, and it is reversed accordingly and the cause is remanded to the criminal court of Cook county.

*Reversed and remanded.*