**People of the State of Illinois, Plaintiff-Appellee, v.
Charles McGill (Impleaded), Defendant-Appellant.**

**Gen. No. 53,667.**

First District, Third Division.

March 19, 1970.

Rehearing denied April 9, 1970.

Howard T. Savage, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Charles McGill, Perry Russell and Clifford Johnson were charged with theft in violation of the Criminal Code (Ill Rev Stats, c 38, § 16–1(b) (1963)) in that they "[k]nowingly obtained by deception control over ten thousand dollars in United States currency, the property of Edgar Cox, intending to permanently deprive said Edgar Cox of the use and benefit of said property. . . ." They waived jury and on trial by the court, McGill and Johnson were found guilty and Russell was acquitted. McGill was sentenced to serve a term in the penitentiary of not less than three nor more than nine years. On this appeal, brought solely by McGill, he contends that the only evidence linking him to the crime was a vague and uncertain identification by the victim of the offense.

We are here concerned with one of those complicated criminal enterprises commonly known as a "confidence game." In it each one of a group of conspirators plays a distinctive part in weaving a net for a victim or "fall guy" who has a substantial sum of cash available and is eager to make a quick addition thereto. The events may best be related by starting with a dramatis personae

and a statement of the part that each is alleged to have played.

Edgar Cox, the alleged victim, was 73 years old, retired and living on a Commonwealth Edison Company pension. He had in excess of $10,000 on deposit at Bell Savings & Loan, located in the central business district of Chicago commonly called the Loop. Clifford Johnson, an alleged resident of Alabama who had recently arrived in Chicago, was the first of the defendants to strike up an acquaintance with Cox. He is alleged to have started the proceedings when he casually met Cox at 54th Place and Woodlawn Avenue in Chicago and asked Cox if he would help him find a place to stay. Charles McGill is alleged to have been the one who dangled a quick profit before Cox if the latter would lend him $10,000, in return promising to pay Cox $15,000 as soon as he collected a gambling debt owed him. Perry Russell, appearing as a friend of McGill's, allegedly accompanied the others to Bell Savings and Loan and assisted in inducing Cox to withdraw $10,000. A fourth person unknown was also present when Cox withdrew the money. He had been seen by Cox earlier that day when Cox cashed a small check at the University Bank. Since Cox was first approached by Johnson when he was on his way home from the University Bank, this fourth person would have been in a position to inform his alleged confederates that a likely victim was in the offing. With this introduction to the principal characters we proceed to summarize the evidence.

Cox testified that shortly before noon on May 2, 1966, he went to the University Bank in the vicinity of 5500 Kimbark Avenue, Chicago to cash a check. On his way home he was approached near the corner of 54th Place and Woodlawn Avenue by a man later identified as codefendant Johnson. Cox had not known Johnson before that time. Johnson told him he was from Alabama

and was a stranger in Chicago and he asked Cox whether he would help him find a place to stay. He exhibited a large roll of bills, telling Cox it contained $47,000. At that time Cox noticed a man, later known to him as McGill, alighting from a parked car on the side of Woodlawn Avenue opposite the place where he and Johnson were talking. McGill approached them and asked, "What's the trouble?" Cox explained that Johnson was looking for a place to stay and then he (Cox) began walking away. McGill grabbed him by the arm, saying, "No man, don't leave. We want to help this man. Come on and let's help him." McGill asked Cox and Johnson to get in his car so they could drive around and look for a place for Johnson to live. The three men got in the car and drove a few blocks when McGill stopped the car and began playing cards with Johnson. They gambled on each hand by making an initial bet and then betting double or nothing on each subsequent hand. About ten minutes after they started, McGill told Cox he had just won $35,000 and he insisted that Johnson pay him. Johnson replied, "I can't give it to you unless you get some money to show me that you got enough to pay for my winning—my losing." Johnson wanted McGill to "put up" $10,000 because "He wasn't going to pay him [McGill] on false pretenses." McGill asked Cox to get $10,000 so they could show Johnson the money. He told Cox that if he would get the $10,000, he (McGill) would give him $15,000 of the $35,000 which he would then be able to collect from Johnson. McGill left the car and walked into a nearby alley and several minutes later he returned with Russell and another man who was unknown to Cox.

Cox further testified that the four men drove him to his home where he picked up his passbook and that they then proceeded to Bell Savings where he had funds on deposit. Upon their arrival at Bell Savings, Cox went inside and withdrew $10,000 in cash. He reentered

426

the car and they drove several blocks when McGill parked the car and asked whether he could see the money. Cox had just removed the bills from his pocket when McGill snatched them from his hand. McGill then gave Cox a bundle wrapped in paper which he said was the "money," apparently referring to the $15,000 he had earlier promised Cox. At McGill's suggestion Cox put the bundle under his shirt without examining its contents. All the men, Cox included, returned to Bell Savings so that Cox could deposit the "money" he thought he had under his shirt. Upon arriving at Bell Savings, McGill and Cox both got out of the car and walked toward the entrance of the building. McGill, however, turned and ran back to his car where his confederates were waiting. Cox remained where he was standing, removed the bundle from under his shirt, opened it and found that it contained only paper napkins. He did not immediately report the incident to the police because he was "dazed." Instead he went home and told his wife what had happened. She called the police. The following day, May 3, 1966, Cox gave the police a description of the men involved.

Cox testified that he attended six or eight police lineups in May 1966, but was unable to recognize any of the men. He was also shown many photographs by the police but did not recognize any of the men. On June 14, 1966 he attended a police lineup consisting of seven men. On that occasion he recognized McGill, Johnson and Russell. He testified that while the lineup was being conducted, McGill said to him, "If you got any more money, I'll get that." When asked to repeat the description of McGill which he had given the police, Cox testified that he told them McGill was a small man with a thin face, dark brown skin and weighing about 160 or 170 pounds. He thought he may have told the police that McGill was wearing a "kind of brown suit" and a small gray hat.

Police officer Patrick Daly testified that Cox gave him descriptions of three of the four men he said were involved. Of these descriptions, the police noted one as follows: "male negro, 40 to 43, five, nine; 145 pounds, slender build, dark skin, smooth shaven, black kinky hair, wearing a brown 'stingy brim' hat, dark green suit, dark grey shirt, very small feet for a man." Daly testified that McGill did have very small feet for a man. McGill argues that this description was intended to depict him, but officer Daly testified that it was the description he had noted as offender "number two" without reference to any specific individual.

Police officer John Hill testified that he showed Cox about two hundred photographs of possible suspects, including one of McGill, but that Cox did not recognize McGill. On June 14, 1966, Cox identified McGill in a lineup at a local police station.

█ McGill contends that an examination of the record reveals the unreliability of his identification by Cox. He first refers to an alleged inconsistency in the "descriptions" of him as given by Cox shortly after the theft occurred. It is argued that these supposed inconsistencies show the unreliability of his later identification by Cox. A careful reading of the record, however, reveals that Cox gave but one description of the men involved and that the alleged inconsistencies lie in the testimony of officer Daly and Cox as to what each remembered that description to have been. Cox's version as related at the trial was given in response to a question asking whether he could recall how he had described McGill to the police at the time he first reported the incident. Officer Daly testified as to what he remembered that same description to be, but only after he had refreshed his memory from his notes. Any variation between what Cox remembered at the trial as being the description he gave of McGill the day after the occurrence and what officer Daly remembered that description to be

428

bears only remotely on the reliability of Cox's identification of McGill.

■ McGill argues that the unreliability of his identification is demonstrated by Cox's failure to recognize him upon viewing his photograph at police headquarters. In People v. Woods, 114 Ill App2d 348, 252 NE2d 717, we held that the victim's failure to recognize the defendant when he viewed a police photograph of him did not necessarily render a later lineup identification suspect. Our holding there applies with equal force to the instant case. Moreover, as we have hereinbefore noted, Cox testified that while in the lineup McGill said to him, "If you got any more money, I'll get that."

■ Finally, it is contended that since Cox was able to identify only McGill and Johnson but not Russell, his identification of McGill must be considered unreliable. This was evidence as to the fallibility of Cox's memory, but the trial court could well have taken into account the different circumstances under which Cox viewed the two men. McGill was the protagonist in the scheme while Russell was alleged to have played only a passive role. As a consequence Cox spent much more time in McGill's company than he did in Russell's and he never wavered in his identification of McGill.

There is ample evidence in the record to support McGill's guilt beyond a reasonable doubt and the judgment is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.