People of the State of Illinois, Plaintiff-Appellee, v. Steve Keller (Otherwise Called Stephen Keller), Defendant-Appellant.

Gen. No. 54,088.

First District, Third Division.

September 3, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker and Norman W. Fishman, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joseph J. Urso, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant was indicted for armed robbery, waived his right to a jury trial, was found guilty by the court and sentenced to the Illinois State Penitentiary for not less than two nor more than eight years. On appeal, the only point made in the Points and Authorities of his brief is that the State did not prove guilt beyond a reasonable doubt. He bases this principally on the contention that his flight from the police following the robbery in question should not be considered as evidence of guilt because at that time he was under arrest on two other charges. He also contends that certain hearsay evidence was improperly admitted. A summary of the evidence follows.

William Mukahirn testified that on July 14, 1968, he was the manager of a shoe store at 3216 Lincoln Avenue in the City of Chicago. At about 4:30 p. m. he was alone in the store when two white males came in. One, the defendant, was wearing a black shirt and black pants and light colored sunglasses. The other man was also dressed in black. He was heavyset and according to Mukahirn had "funny" lips. Defendant gave Mukahirn a dollar for a pair of socks which were in a "glass counter." He then pulled a gun from his shirt and the other man went around the counter and took some money out of a drawer next to which Mukahirn was standing. Mukahirn testified that he got a better look at the defendant than he did at the other man. The two men were in the store two or three minutes and after they left, Mukahirn called the police and gave them a description of the men.

The next time Mukahirn saw defendant was on the afternoon of August 8, 1968, less than a month after the robbery. He was putting a new window in the store when he saw defendant on the back of an orange motorcycle which was stopped in front of the store for ten or fifteen seconds. He yelled to two employees in the store that

403

that was the man who had robbed him. He again called the police to report that he had seen one of the robbers.

On August 10, 1968, Mukahirn saw the same orange motorcycle when it passed in front of the store. He had his helper go next door to call the police. Again, on the same day, he saw the motorcycle after the store had been closed. He followed it and saw it at 1740 Fletcher Street, which is in the neighborhood of the store. He went to the police station and got Detectives Nere and Muscolino, who went with him to the Fletcher Street address where the motorcycle was found. As the police were talking to three teen-age girls who answered the door, a car went past slowly. Mukahirn saw defendant in the car and called to the police that he was the man who had robbed him. The police got in their car and followed and stopped the car in which defendant was riding. In the car with him were two other males and one female. Mukahirn identified defendant and later went to the station to sign a complaint.

Detective Nere testified that Mukahirn came to the station on August 10, 1968, that he and Officer Muscolino went to 1740 Fletcher Street and Mukahirn followed in his car. Upon Mukahirn's shouting to them, they caught up with a car which had passed by and stopped it. When Mukahirn came up a few minutes later, he identified one of the occupants of the car as one of the robbers. No weapon or money was found on defendant. He was handcuffed and placed in the rear of the squad car but managed to escape and ran down the street, through a gangway and down an alley, where he fell and was captured by Detective Nere.

Defendant testified that he had never pointed a gun at Mukahirn, that he had met him earlier when he bought some shoes in his store sometime in June 1968 and that he had fled because there were two warrants issued for his arrest on other charges having nothing to do with the instant case. He testified that he believed he had been

404

down at the lake on the day of the robbery, but added that he was not sure. We proceed to consider defendant's contention that since there were two other warrants outstanding, his flight should not be considered as evidence that he was guilty of robbing Mukahirn.

■■ While evidence of flight does not raise a legal presumption of guilt, it may be considered in connection with all the other evidence as tending to prove guilt. People v. Lobb, 17 Ill2d 287, 161 NE2d 325; People v. Weber, 401 Ill 584, 83 NE2d 297; People v. Smith 127 Ill App2d 199, 262 NE2d 165; II Wigmore, Evidence § 276, at 111 (3d Ed 1940). The fact that defendant presented an explanation of his flight which is compatible with his innocence has a bearing on the weight to be given the evidence of flight, but does not render such evidence inadmissible.

Defendant cites a footnote in Wong Sun v. United States, 371 US 471, 843–84, n 10 (1963) for the proposition that evidence of flight is of questionable probative value. Wong Sun is not in point since the issue before that court was whether "flight justified an inference of guilt sufficient to generate probable cause" for an arrest. Cases cited in the footnote to the opinion in that case are not in conflict with our decision. In Alberty v. United States, 162 US 499 (1896) the court held it to be reversible error to instruct the jury that flight raised a "presumption of fact" of guilt. In the instant case the trial court considered the evidence of flight as having probative value on the issue of guilt and not as raising a presumption of guilt. In Allen v. United States, 164 US 492, 499 (1896), also cited in Wong Sun, the court held that "the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt." The trial court properly allowed evidence of defendant's flight.

■■ Defendant contends that the identification was unsatisfactory and unconvincing. It is well settled that

405

one witness positive in his identification is sufficient to support a conviction. People v. Mikka, 7 Ill2d 454, 131 NE2d 79; People v. Gipson, 29 Ill2d 336, 194 NE2d 318. Mukahirn's identification of defendant was sufficiently positive. At the time of the robbery he had several minutes to observe defendant. Since the defendant was the one holding the gun and facing Mukahirn across the counter, it is not unreasonable that Mukahirn would have had a better look at defendant than at the other man. When Mukahirn saw defendant on the rear of a motorcycle on August 10, he recognized him immediately and called the police. When defendant went to 1740 Fletcher Street in a car on the day of his arrest, Mukahirn again immediately recognized him. Mukahirn had ample opportunity to positively identify defendant. See, e. g., People v. Davis, 14 Ill2d 196, 151 NE2d 308; People v. McGill, 121 Ill App2d 423, 257 NE2d 517.

██ The failure of the State's witness Mukahirn to remember on cross-examination that he had testified before the Grand Jury and the fact that the police report failed to state that defendant wore sunglasses, as Mukahirn testified, are minor discrepancies which do not seriously detract from his otherwise positive identification. People v. Howard, 121 Ill App2d 87, 257 NE2d 278.

██ Defendant also presents an alibi based solely on his testimony that he thought he had been down at the lake on the day of the robbery, but he added that he was not sure. Reviewing courts have recognized that the trial court who sees and hears the witness is better able to determine his credibility. People v. Williams, 12 Ill2d 80, 145 NE2d 29. In the instant case the court heard and observed the testimony of Mukahirn and concluded that it was "very persuasive and patently honest." We find no basis in the record for disturbing the trial court's determination on that point.

Defendant lastly argues that the testimony of Detective Nere that Mukahirn positively identified defendant is hearsay. The detective was asked:

Q. "And did Mr. Mukahirn make any statement to you at that time?"
A. "Yes, he did."
Q. "What, if anything, did he say?"
A. "He pointed his finger—"
DEFENSE COUNSEL: "Objection again, Judge."
THE COURT: "He may answer. Go ahead."
A. "He positively identified Steve Keller as the number one subject that held the gun on him and robbed him."
THE COURT: "What did he say?"
A. "He said that is the man that robbed me on the 14th of July."

██ ██ The State argues that defendant's general objection to that testimony was not sufficient. It has been held that an objection must be specific enough to inform the court and the opponent of the ground or reason for the objection. People v. Garner, 91 Ill App2d 7, 234 NE 2d 39; People v. Jennings, 298 Ill 286, 131 NE 619. Supreme Court Rule 615(a) (Ill Rev Stats, c 110A, § 615(a) (1969)) provides however that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." That rule was applied in People v. Wright, 65 Ill App2d 23, 212 NE2d 126, a case in which the same issue as that now before us was presented. We will consider whether the alleged hearsay statements of Detective Nere were admissible.

In People v. Lukoszus, 242 Ill 101, 89 NE 749, the identifying witness testified that the defendant was the one who struck the deceased. A policeman also testified

that the witness gave him a description of defendant and that he took defendant to the witness to be identified. The court held that the hearsay rule was violated by admitting the policeman's testimony. No authority was cited for the decision and the court did not give consideration to the fact that the identifying witness was in court and subject to cross-examination with respect to her identification.

Wigmore characterized decisions which held that such evidence was hearsay as a "telling illustration of the power of a technical rule of thumb to paralyze the judicial nerves of natural reasoning." He pointed out that an earlier out-of-court identification often has greater probative value because it is generally made before the suggestions of others have intervened to create a "fancied recognition" in the mind of the witness. IV Wigmore, Evidence, § 1130 (3rd ed 1940).

In the recent case of People v. Carpenter, 28 Ill2d 116, 190 NE2d 738, the court in examining the basis for the hearsay rule, stated as follows (p 121) :

> "The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered. While the administration of an oath and the right of confrontation are also spoken of as necessary elements, the essential feature, without which testimonial offerings must be rejected, is the opportunity for cross-examination of the party whose assertions are offered to prove the truth of the act asserted." (Citations omitted.)

Following the analysis of the hearsay rule set forth in Carpenter, we have recently held that if the person who made the out-of-court identification is present, testifies to his prior identification and is subject to cross-examination, the purpose of the hearsay rule is satisfied.

People v. Hoffman, 124 Ill App2d 192, 260 NE2d 351; People v. Poole, 121 Ill App2d 233, 257 NE2d 583; People v. Burks, 105 Ill App2d 112, 245 NE2d 120. This is in accord with the present trend which is to accept such testimony as evidence of the truth of the matter therein asserted if the declarant is present and subject to cross-examination. Model Code of Evidence, Rule 503 (1952). See Uniform Rules of Evidence, Rule 63(1) (1953); Cal Evid Code, § 1238 (West 1966); Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Rules of Evidence for the United States District Courts and Magistrates, Rule 8–01(c) (2) (iii) (March 1969). We conclude that it was not error for the trial court to admit the testimony of the police officer with respect to Mukahirn's identification of defendant.

We find no reversible error in this case.

Judgment affirmed.

DEMPSEY, P. J. and McNAMARA, J., concur.