THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SANDRA L. WARD, Defendant-Appellant.

First District (5th Division)    No. 61010

Opinion filed April 9, 1976.

Alan D. Blumenthal and James J. Cutrone, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of theft by deception (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(b)) and was sentenced to a term of one to three years in the custody of the Department of Corrections. On appeal, she contends that the trial court erred by (1) denying her motion for a continuance to obtain an impeaching witness, (2) admitting incriminating admissions given in violation of her *Miranda* rights, (3) admitting a police officer's hearsay testimony on an out-of-court identification of defendant made by the complaining witness, and (4) further denying her a fair trial by several evidentiary rulings.

The following evidence pertinent to this appeal was adduced at trial. *For the State:*

*Stella Hollst*

While she was shopping at a supermarket near her home in Maywood on August 26, 1971, she became engaged in a lengthy conversation with defendant. Defendant stated that she was from California and was carrying $7,000 because she distrusted the local banks. Throughout this conversation defendant stood close to Mrs. Hollst and the store's lighting was good.

Thereafter, a third woman, Patricia Plunkett, approached and stated that she had found an envelope in a nearby telephone booth. Plunkett asked Mrs. Hollst and defendant to witness the opening of the envelope. After Mrs. Hollst demurred, Plunkett left the store. Defendant then

suggested that they should have opened the envelope to check for money. When Mrs. Hollst "got a little greedy" and agreed, defendant left and returned with Plunkett.

Plunkett opened the envelope and stated that $15,000 was inside. She offered to inquire about their rights in the money from her employer—an attorney. She then drove defendant and Mrs. Hollst near an office building and went around the corner towards the building. When she returned she said that there was $21,000 and an uncut diamond in the envelope. Plunkett proposed that they divide the money into three $6,000 shares with the remainder going to her employer. She asked defendant and Mrs. Hollst to post some earnest money as security to insure that it would not look suspicious if they suddenly possessed a large sum of money. Defendant immediately gave Plunkett a wallet supposedly containing her $7,000 withdrawal.

Thereupon Mrs. Hollst gathered her own bank books and withdrew $4,000 from two banks. Defendant accompanied her into the banks and was present when Mrs. Hollst gave her $4,000 to Plunkett.

Plunkett, defendant and Mrs. Hollst then drove back to the office building where Plunkett left to give Mrs. Hollst's $4,000 to her employer. When she returned to the automobile, Plunkett told Mrs. Hollst that she could now pick up her $6,000 share plus her $4,000 security. However, when Mrs. Hollst went to the designated office, she found a travel bureau. She quickly returned to where the automobile had been parked, but Plunkett and defendant were gone. She finished her shopping and called the police upon her return home.

Mrs. Hollst identified defendant in court as the shill in this confidence game. Although defendant's hair was red at trial, it had been blonde on August 26, 1971. She had also identified Plunkett and defendant in police photographs prior to trial.

On cross-examination, she admitted previously testifying that she was in the store at 3 p.m. not at 1:30 p.m. She also stated that defendant had "shoulder length hair * * * she did not have short hair."

On redirect, she stated that her husband suffered a heart attack a few days after this incident. Defendant objected and moved for a mistrial. The trial court immediately struck the answer and denied defendant's motion.

Thereafter a hearing was held on defendant's motion to suppress certain admissions made by defendant at her initial interrogation. Defendant testified that she was not given the *Miranda* warnings. Defense counsel then called Officer Guynne who detailed his interrogation of defendant. On cross-examination he stated he advised her, *inter alia*, that "she had the right to obtain the services of a lawyer" and that a lawyer would be appointed if she could not afford one. Defense counsel argued

that defendant's admissions were induced by promises or coercion. The State argued that defendant's vague testimony and her record of prior warnings and arrests negated defendant's arguments. The trial court denied the motion to suppress.

*Jeffery Guynne*

He was a Maywood police officer on August 26, 1971. His investigation led him to suspect Patricia Plunkett. He took approximately ten photographs to Mrs. Hollst and she identified Plunkett and defendant. During his interrogation of defendant she stated that "she wasn't very good at this and had messed up some of the other attempts that they had had." Defendant also admitted that "she split fifty-fifty with Patricia Plunkett and then had to split fifty-fifty, her share, with Charles Pigrin."

At the conclusion of the State's case, defendant moved for a continuance in order to bring Sergeant Ronald Smith into court to testify to a description of defendant in his police report as having *short* blonde hair. The trial court denied the motion after specifically finding that defendant had the report for several days prior to trial and that it was not impeaching, in any event, since it did not indicate that Mrs. Hollst had given the description.

*For Defendant:*

*Edward Genson*

He is an attorney who represented Plunkett at a preliminary proceeding. He happened to walk into the courthouse hallway with Mrs. Hollst. She incorrectly identified a tall, stocky woman with blonde hair as being the defendant.

The State later introduced the appearance filed by Genson on defendant's behalf in this case.

*Defendant Sandra Ward on her own behalf*

She denied committing the crime or making any admissions to the police. She was "probably at home" on the day of the crime.

On cross-examination, she denied knowing Patricia Plunkett, but later admitted that her friend, Patricia Paradise, was also known as Patricia Plunkett.

OPINION

■■ Defendant first contends that the trial court erred by denying her motion for a continuance to obtain an impeaching witness. Motions for a continuance are within the sound discretion of the trial court and must be considered in light of the diligence shown by the movant. (Ill. Rev. Stat. 1975, ch. 38, par. 114—4(e); *People v. Hicks*, 125 Ill. App. 2d 48, 259 N.E.2d 846.) In the instant case, defendant made a belated attempt to subpoena a policeman to testify to a conflicting description of defendant's hair length. The record clearly shows that defendant had the police report

for several days prior to trial. We cannot say that defendant was surprised by this arguably conflicting testimony since her main defense was an attack upon the complaining witness's identification of herself as the shill in the con game, and, thus, the importance of all possible identification witnesses could have been foreseen prior to trial. Since defendant failed to show due diligence in having a witness who was crucial to that initial identification available to testify when her main defense involved her identification, we believe the trial court acted within its proper discretionary powers and we reject defendant's initial contention.

■■ Defendant next contends that the trial court erred by admitting incriminating admissions given in violation of her *Miranda* rights. She argues that Officer Guynne's admonition that she had the right to an attorney was insufficient since it failed to apprise her that she had the right to the attorney during the interrogation. In a similar situation, our Supreme Court held the warning that defendant had the right to have "an attorney present" satisfied the constitutional prerequisites. (*People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied*, 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Since we believe that defendant's second contention is controlled by *Prim*, we quote directly from the rationale of that case:

> "It would be a strained construction of the language used by the detective to say that it conveyed a meaning that an attorney would be furnished at some future time. All of the warnings related to the giving of a statement. One part thereof viewed by itself may be subject to a different interpretation but when viewed in the context of the entire discussion it can only refer to the right to have counsel provided for the defendant at the time of the interrogation." *People v. Prim*, 53 Ill. 2d 62, 67, 289 N.E.2d 601, 605.

■■ Defendant also contends that the trial court erred by admitting Officer Guynne's hearsay testimony on an out-of-court identification of defendant made by the complaining witness. She argues that the testimony bolstered the otherwise weak in-court identification by Mrs. Hollst. In *People v. Lukoszus*, 242 Ill. 101, 89 N.E. 749, the court reversed a conviction for murder holding that the admission of an officer's hearsay testimony on the complaining witness's identification constituted reversible error. However, our Supreme Court has held similar testimony to be error, but not reversible error, in more recent cases involving like circumstances. (*People v. Canale*, 52 Ill. 2d 107, 285 N.E.2d 133; *People v. Sterling*, 341 Ill. 112, 173 N.E. 139.) Moreover, we believe that when the declarant is present in court and subject to cross-examination, as Mrs. Hollst was in this case, the trustworthiness of the testimony can be readily established, and the basic rationale behind the exclusion of the hearsay is circumvented. (*People v. Keller*, 128 Ill. App. 2d 401, 263 N.E.2d 127; see

Federal Rules of Evidence Rule 801(c), 28 U.S.C.A.) We conclude, therefore, that the trial court did not err by admitting this testimony.

■■ Finally, defendant contends that she was denied a fair trial by several evidentiary rulings. The trial court sustained objections to State questions and to certain testimony concerning Mr. Hollst's heart attack, Patricia Plunkett's record of prior offenses, and certain investigatory findings. The jury was instructed to disregard these matters in its deliberations. After carefully scrutinizing the record, we are convinced the questions and testimony do not constitute reversible error when viewed in the proper perspective of the entire trial record. See *People v. Dukett*, 56 Ill. 2d 432, 308 N.E.2d 590, *cert. denied*, 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226; *People v. Wilson*, 51 Ill. 2d 302, 281 N.E.2d 626.

■■ Defendant's argument that her admission was inadmissible evidence of prior offenses cannot be sustained. Generally, evidence of other crimes committed by a defendant is irrelevant and inadmissible. (*People v. Oden*, 20 Ill. 2d 470, 170 N.E.2d 582.) However, evidence which tends to prove a fact in issue is admissible even though it discloses that defendant committed another crime. (*People v. Dewey*, 42 Ill. 2d 148, 246 N.E.2d 232.) Here, defendant's admission tied her to the crime in question when she stated that "she wasn't very good *at this* \* \* \*." The statement tends to establish her identity as one of the perpetrators of the crime. When we balance the probativeness of this admission against its alleged prejudicial effect, we cannot say that it was so irrelevant to the facts in issue that the trial court should have excluded it.

For the reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

DRUCKER and BARRETT, JJ., concur.