THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ARTHUR SAFFOLD, Defendant-Appellant.

First District (2nd Division)   Nos. 61282, 63239 cons.

Opinion filed April 19, 1977.

Edward M. Genson, Theodore M. Becker, and J. Samuel Tenenbaum, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant was indicted for rape and robbery, waived his right to a jury trial and was found guilty by the court on both charges. He was sentenced to concurrent terms of 5 to 8 years on the rape conviction and 2 to 4 years on the robbery conviction. On appeal he contends that the trial court erred in that (1) the trial court should not have admitted testimony of a police officer that the complaining witness had identified the defendant as

her assailant at a lineup, (2) the trial court should have admitted into evidence the results of a polygraph examination taken by the defendant even though there was no stipulation from the State, and (3) defendant was not proven guilty beyond a reasonable doubt.

We affirm.

The following evidence pertinent to this appeal was adduced at trial:

On the evening of January 1, 1973, complainant had been visiting relatives in a west suburban area of Cook County. While driving home her car became disabled on the Congress Expressway east of Kostner Avenue, in the City of Chicago. After pulling her car to the right shoulder of the expressway, two cars stopped to offer her assistance—one was driven by the defendant and the other by an unidentified male who was driving a station wagon and was accompanied by his wife and family.

After pushing complainant's car to a safe location on the shoulder of the expressway and checking the car's engine, the two men concluded that her car was out of gas. Complainant gave the defendant sufficient money to procure some gas for her car. The two men left in defendant's car. When they returned with the gas, the car would still not start, and defendant told complainant that he was of the opinion that the problem was due to a malfunctioning battery. The unidentified helper explained to complainant that there was nothing further he could do, returned to his station wagon and with his wife and family left the scene.

Defendant offered to drive complainant to the gas station to return the borrowed gas can and to obtain the return of her deposit thereon. Complainant accepted defendant's offer and was driven by the defendant in his car to a gas station on Independence Boulevard. At that station defendant returned the gas can and gave complainant the money deposit he had received from the station attendant.

Defendant then offered to drive complainant to another station in order for her to arrange for the towing of her disabled car. Again complainant accepted the offer. However, instead of driving her to another gas station, defendant drove to an empty parking lot. They arrived at the lot at approximately 11:30 p.m. and defendant parked his car. Defendant told complainant they were going to sit and listen to some tapes he had in the car.

Complainant became very nervous and afraid for her physical well-being. Within minutes of arriving at the lot defendant, apparently fearing possible police patrols, proceeded to another empty lot which was situated in an area that was not familiar to complainant. This move heightened her fears even more. At this new location defendant told complainant that he intended to have sexual intercourse with her and take her money for it. Defendant, against her wishes, grabbed her purse and removed $40 of complainant's money, whereupon she began to cry.

Complainant then attempted to flee but was caught and detained by defendant before she could exit his car. Defendant then slapped her repeatedly across the face. He proceeded to unbutton her coat, remove her stockings and panties, pull up her skirt and unzip his trousers while restraining complainant by means of a one-handed stranglehold he had placed on her throat. She continued in her efforts to resist but was overcome by the defendant's superior strength and positioning. Defendant then placed his body on top of complainant and engaged in an act of sexual intercourse in a face-to-face position for a period of five minutes.

Subsequent to the act of intercourse, defendant drove his car toward the street, pulled behind a cab, gave complainant $5 and told her to take the cab. Complainant hurriedly exited his car and, after a short scuffle with the defendant over a ring she was wearing, entered the cab.

With her clothing disheveled and in a hysterical condition, complainant managed to observe the license number of the defendant's car while she screamed to the cab driver that she had just been raped and to write down the license number of defendant's car. Complainant then directed the cab driver to take her to the police station. After arriving at the police station she was transported to the Cook County Hospital where a pelvic examination revealed the presence of sperm in her vaginal area. She was also treated for facial trauma and bruises.

Complainant related her story to the investigating officer who immediately checked the license number she gave to him. Upon learning of the owner's address, the officer proceeded to the suspect's residence. However, defendant, who owned the car, was not at home. Subsequently, defendant presented himself at the police station, was fully advised of his rights by the officer who had taken complainant's initial statement and was then questioned about the incident.

On January 2, 1977, at 9 a.m. the complainant viewed a lineup conducted by the investigating officer. At that time she identified the defendant as her assailant.

During the trial complainant positively identified defendant as the party who had raped and robbed her. The investigating officer, Investigator Rochowicz, was allowed to testify, without objection, that complainant had picked defendant out of the lineup and identified him as her assailant. No objection was raised at trial or on appeal concerning the lineup procedure itself.

The defendant attempted to establish an alibi defense by a witness who was a long-time friend. Defendant also claimed that he was in fact the party who left the scene of the disabled car while the other unidentified person remained with the complainant.

Prior to trial defendant filed a motion to permit the introduction of

expert testimony regarding the results of a polygraph examination taken of defendant by a private testing agency. The trial court refused to allow admission of the examination because of the State's refusal to stipulate to its admission.

Defendant contends that the trial court's admission of Officer Rochowicz's testimony regarding complainant's lineup identification of defendant was error in that this testimony was inadmissible hearsay and should not have been allowed into evidence to bolster complainant's in-court testimony. We are of the opinion that this contention is not well-founded.

In a number of well-reasoned cases, extending from 1970 to the present, this court has " * * * held that if the person who made the out-of-court identification is present, testifies to his prior identification and is subject to cross-examination, the purpose of the hearsay rule is satisfied." *People v. Keller* (1st Dist. 1970), 128 Ill. App. 2d 401, 408, 263 N.E.2d 127, 131. See also *People v. Ward* (1st Dist. 1976), 37 Ill. App. 3d 960, 347 N.E.2d 381; *People v. Mitchell* (1st Dist. 1975), 34 Ill. App. 3d 311, 340 N.E.2d 226; *People v. Coleman* (1st Dist. 1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.

■■ We conclude from a review of the record that the trial court's admission of the police officer's testimony with respect to complainant's lineup identification of defendant was not error.

■■ With regard to defendant's contention that the trial court should have allowed his motion to introduce the results of a polygraph examination without a stipulation by the State, the established law in this jurisdiction does not allow the admission of such tests without stipulation of the parties.

The modern polygraph is intended to reflect changes in the examinee's blood pressure or pulse rate, respiration rate and depth and galvanic skin response while undergoing questioning. From the physiologic manifestations shown on the machine the operator comes to a conclusion or opinion as to whether the examinee is telling the truth or is being deceptive in answers to relevant questions. See Annot., 53 A.L.R. 3d 1005 (1973).

Despite advances which the defendant claims have been made in the field of polygraphic examination, it remains established in Illinois and in virtually every other jurisdiction that in the absence of stipulation between the parties, the results of the polygraph examination are not admissible in evidence. *People v. Zazzetta* (1963), 27 Ill. 2d 302, 189 N.E.2d 260; *People v. Gargano* (2d Dist. 1973), 10 Ill. App. 3d 957, 295 N.E.2d 342.

The reason for this limitation is that the polygraph or lie detector is not an instrument which automatically and unerringly discloses a lie being told by the person being tested. It cannot be said to be completely

accurate because of the human elements—the psychological and emotional makeup of the examinee and the competence of the examiner in conducting the test and evaluating the results. See Annot., 23 A.L.R.2d 1306 (1952).

Logic supports the *Zazzetta* finding that "[i]n the absence of stipulation, our courts, without exception, reject the results of lie-detector tests when the same are offered in evidence \* \* \*." (27 Ill. 2d 302, 306.) This rule is based on the still valid ground that sufficient reliability regarding the results of polygraphic tests has yet to be established. Therefore, we conclude that the trial court did not err when it denied the defendant's motion.

Defendant's final contention is that he was not proven guilty beyond a reasonable doubt. We believe that complainant's accusations were sufficiently corroborated by the facial wounds, the presence of sperm in her vaginal area, the sufficient amount of time and the favorable conditions under which she was able to view the defendant and thereby identify him and her immediate complaint of the rape and robbery to both the cab driver and the police.

■■ From the record before us and the trial court's findings, we conclude that complainant's testimony was clear, convincing and credible even though parts of her story were contradicted by the defendant and his alibi witness. As a general rule, the testimony of a complaining witness alone is sufficient to sustain a conviction for a sex offense and robbery where her testimony is clear and convincing even though it may be contradicted by the accused. *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.

■■ In a bench trial, it is the duty of the trial judge to determine the credibility of the witnesses and the weight to be given their testimony. On review, the trial court's judgment in this regard will not be disturbed unless the evidence is so unsatisfactory as to raise a reasonable doubt as to the defendant's guilt. (*People v. Henley* (1st Dist. 1976), 36 Ill. App. 3d 223, 343 N.E.2d 656; *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.) Here the trial judge believed complainant's testimony and from our review of the record we cannot say that the evidence underlying both the rape and the robbery charges was so unsatisfactory as to leave a reasonable doubt as to the defendant's guilt on either charge. We therefore affirm.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.